"For the reason given the certificate is dismissed."

We recommend that the writ of mandamus be denied.

CURETON, C. J. The opinion of the Commission of Appeals is adopted, and mandamus is refused.

---

**STATE et al. v. CHICAGO, R. I. & G. RY. CO.**
**(No. 552–3843.)**

(Commission of Appeals of Texas. Section A. June 28, 1924.)

**1. Mandamus ☞117 — Court cannot require commissioners' court to place different valuation on property.**

District court cannot require commissioners' court by mandamus to place a different valuation on property other than value theretofore placed on said property by commissioners' court.

**2. Constitutional law ☞284(1) — Taxation ☞406—After payment according to valuation of equalization board requiring additional payment on ground of undervaluation held to involve taking without due process.**

When question of valuation for taxation has been once regularly referred to county board of equalization under Rev. St. arts. 7524, 7569, 7570 (Const. art. 8, § 18), its valuation is final, and after taxpayer has paid according to such valuation, and, in absence of statute authorizing further assessment, any attempt to require him to pay additional tax on ground of undervaluation would constitute taking of property without due process.

**3. Taxation ☞500 — Railway not bound by judgment declaring assessment of property illegal where not party.**

A railway company not a party to suit brought by improvement district against tax assessor and commissioners' court was not affected by a judgment declaring an assessment invalid, and a new assessment had no effect against it.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by the State of Texas and another against the Chicago Rock Island & Gulf Railway Company. From a judgment of the Court of Civil Appeals (241 S. W. 255) reversing a judgment for plaintiffs, they bring error. Affirmed.

Ike A. Wynn, of Fort Worth, for plaintiffs in error.

Lassiter & Harrison, of Fort Worth, for defendant in error.

CHAPMAN, J. During the years 1911 to 1914, inclusive, defendant in error owned two and three-tenths miles of railroad within improvement district No. 1 in Tarrant county. During each of these years this property was rendered and assessed for taxes in the manner prescribed by law at a valuation of $28,950 for 1911 to 1913, inclusive, and $29,200 for 1914, and valuation of said property during each of said years was passed on by the board of equalization of Tarrant county, and approved, and in each of said years the board of commissioners of said improvement district appeared before the equalization board and made all necessary protest against the value placed on said property, but the board refused to heed such protests. The taxes, based on the valuation made by the board of equalization, were promptly paid each year. Said renditions and assessments were made, and the taxes paid thereon on the ratio of the value of the railroad mileage in the said improvement district bore to the value of its entire mileage in Tarrant county. Considering the appellant's mileage in said improvement district by itself and separately, it appears more valuable than the mileage in other parts of Tarrant county, by reason of the fact that there was 57 acres of land owned by appellant on which were located railway yards, roundhouses, numerous switches and sidings, buildings, improvements, and terminal facilities. There is no claim that the railway company, under the provisions of article 7524, Revised Civil Statutes, did not render for taxes each year, all its property in said improvement district.

For a further statement of the case we take this from the opinion of the Court of Civil Appeals. It appears that on November 7, 1914, the Fort Worth improvement district No. 1 instituted suit in the district court against the county commissioners' court, the board of equalization and the members thereof, and the tax assessor of Tarrant county, seeking to set aside and declare invalid the valuation and assessments made

and approved by the commissioners' court as a board of equalization of appellant's railway within the improvement district made for the years 1911 to 1914, inclusive, and to compel, by writ of mandamus, the said officers to proceed to assess and value all of appellant's property within the improvement district at another and different proportionate value. The petition in that suit alleged that the assessments for the several years were incorrect and invalid; that they were unreasonably and unconscionably less than the true and full value of said property; and that the assessments were arbitrarily and knowingly made at about one-sixth of the true value of the property within the improvement district; and that the assessments were fraudulently made. Upon a hearing of that cause the district court entered the following decree (omitting formal parts):

"It appearing to the court that in making the assessment of the property described in plaintiffs' first amended original petition for the years 1911, 1912, 1913, and 1914, the entire main track mileage of said railway company within the county of Tarrant, including that outside the levee district was considered, and a valuation of so much per mile of the main track within the levee district was arrived at by considering the entire main track mileage within the county as done for county purposes; and it further appearing that such action was arbitrary and resulted in a valuation far less than the true and full value of the property, and in an assessment far less than the proportionate value at, which the other property within said district was assessed, and, it further appearing that such arbitrary action and assessment constitute a fraud upon plaintiff's right and deprives it of taxes which it is entitled to collect, it is considered by the court that as to the taxes which it is entitled to collect, it is considered by the court that as to the taxes for the years 1911, 1912, 1913, and 1914 the said plaintiff is entitled to the relief prayed for, and that the assessments for said taxes are invalid and should be set aside.

"It is therefore ordered, adjudged, and decreed by the court that the assessments made upon the property of the Chicago, Rock Island & Gulf Railway Company, within Fort Worth improvement district No. 1, for levee purposes, for the years 1911, 1912, 1913, and 1914, are hereby declared to be invalid, of no force and effect, and are hereby set aside.

"It is further adjudged and decreed by the court that a writ of mandamus issue against the defendants herein, in accordance with law, as prayed for in plaintiff's first amended original petition, directing the said defendants, the board of equalization, Jesse M. Brown, county judge of Tarrant county, R. E. Duringer, H. R. Wall, Olin Gibbins and R. Snow, composing the board of equalization and the assessor of taxes of said Tarrant county, Tex., to proceed to assess at the same proportion of its real and true value as the assessments of other property within said district have been made for the years 1911, 1912, 1913, and 1914 for levee purposes, all the property of the Chicago, Rock Island & Gulf Railway Company located with-

in Fort Worth improvement district No. 1, in Tarrant county, and described in plaintiff's first amended original petition, and further directing each of said defendants to perform his respective duties imposed by law in making said assessments."

The defendants in that particular suit filed a motion for new trial, but the same was overruled, and no further step was taken to appeal. Thereafter a writ of mandamus was duly issued and served on the said defendants, and thereupon, on August 8, 1916, the county commissioners' court at a regular meeting canceled the prior assessments on said property of appellant, ordered a list of the property to be made as required by law, and referred such list to the tax assessor of Tarrant county to be reassessed. The tax assessor, after reassessing the said property for the years 1911, 1912, 1913, and 1914 at the value of $80,000 for each year, submitted such reassessments to the commissioners' court; and it, acting as a board of equalization, after notice to the appellant, and after the appellant by its attorney had appeared and was heard, passed on the assessments and valuations, and fixed and assessed the property at the sum of $80,000 for each of said years, and computed the taxes upon the basis of the tax rate for each of said years. The tax lists were then made up, approved, certified, and returned and delivered to the tax collector of Tarrant county. The taxes on this reassessment are the taxes sued for in the instant suit now on appeal.

The question for decision is an agreed one. "It is agreed," quoting from the decision by the trial court and the appellate court, "that the sole question in this case for the determination of the court is whether the reassessment by the tax assessor and the county commissioners' court as a board of equalization is legal and binding upon the defendant under the facts hereinbefore stated."

The trial court held the reassessment to be legal, and the Court of Civil Appeals of the Sixth District held it to be illegal. 241 S. W. 255.

[1] The right of the district court to require the commissioners' court, by mandamus, to place a different valuation on the property of the railway company other than the value theretofore placed on said property by the commissioners' court is discussed in the case of Dillon v. Bare et al., 60 W. Va. 483, 56 S. E. 390. In a case very similar to the case under consideration, except in that case the mandamus prayed for was to require the equalization board to make a change in the assessment for the current year, the court in discussing that case uses the following language:

"It is further objected that, though there is jurisdiction by mandamus to the extent above stated, the writ cannot go in either of these cases, because the valuation of property is a

matter committed by the law to the discretion of the assessors, and is not reviewable otherwise than by the tribunal, and in the manner prescribed by the statute, namely, by the county courts upon applications made by the owners of property, for the corrections of error. The exercise of such discretion is not subject to control by the writ of mandamus, but mandamus is a proper remedy to compel an officer, possessed of discretionary powers, to exercise them. If he refuses to act at all, he may be compelled to proceed, but the court which compels him to do so will not prescribe, in its order, how he shall proceed, or rather what his judgment and determination shall be. In other words, in a case like this, if an assessor should refuse to assess property that is taxable, any court having jurisdiction over him by mandamus will compel him to assess, but will not determine the value at which he shall assess it."

[2] On the question of the valuation fixed by the commissioners being final, we quote first from the case of I. & G. N. R. R. Co. v. Smith County et al., 54 Tex. 1.

"The expressed intention of the law is to make the decisions of the board of equalization final on the question of valuation."

In the case of T. & P. Ry. Co. v. Harrison County, 54 Tex. 122, the railway company was seeking to have set aside the act of the equalization board and raising the valuation of its property as rendered by it, and we quote from that case as follows:

"Second. The question of valuation appears to have been regularly referred to the board of equalization, and, when so referred, the valuation of that tribunal was final. * * * The company appears to have listed its interest in the land over which it had the right of way, and on which its roadbed was constructed, as so many miles of road. The valuation appears to have been raised by the acting deputy assessors and by the board of equalization in the same way. As that valuation was final, it is not important to inquire as to the mode by which it was arrived at."

In Duck v. Peeler, 74 Tex. 268, 11 S. W. 1111, where the appellee was seeking to have set aside the valuation placed on his property by the board of equalization on the ground that he and the tax assessor had agreed on a less valuation, the law, in effect, as to the action of the board of equalization at that time, was as follows: "The board of equalization shall have power to correct any errors in the assessment of property at any time before the tax is paid on said property," and in this case Chief Justice Stayton discussed this statute as follows:

"This is a broad statute and covers errors in valuation as well as all others, but if the value was fixed by the board of equalization before the tax roll was made out as contemplated by the statute, the valuation, within the meaning of the law, thus fixed could not be erroneous or subject to further change."

In County of Galveston v. Galveston Gas Co., 72 Tex. 509, 10 S. W. 583, the Supreme Court had under consideration a case much like the one we have before us. The property for the gas company for the year 1876 was rendered by it at a valuation of $141,125 which valuation was accepted by the tax assessor, and this valuation was approved by the county commissioners' court on June 2, 1876, and on July 8th following the tax roll containing this assessment was duly certified for collection. The total state and county tax on this assessment was paid by the gas company to the proper collector of taxes on February 22, 1877. After the assessment was made, the Constitution of 1876 was adopted—at that time John A. McCormick was elected assessor of the taxes of Galveston county and qualified and entered on the discharge of his duties. Some time after May 4, 1876, the assessor, McCormick, under instructions from the comptroller, applied to the secretary of the gas company for a list and appraisement of the company's property for that year. The secretary informed him that the company's property had already been assessed for that year, and refused to furnish a further list, whereupon some time in the month of June the assessor made a further assessment against the company on the same property of $418,875, which assessment was approved by the county commissioners' court on September 22, 1876, and afterwards certified for collection. On July 5, 1877, the gas company petitioned the commissioners' court to relieve it from the assessment made by McCormick, which was refused, but on recommendation of McCormick the supplemental assessment was reduced to $265,578. To collect the taxes on the supplemental assessment the collector of taxes levied upon and advertised for sale some of the real estate owned by the gas company, whereupon, to avoid the threatened sale, the company, under protest, paid the tax collector under the additional assessment. Action was brought by the gas company to recover from the county the sum paid on taxes claimed by it under the assessment made by McCormick, and in an opinion by Chief Justice Stayton it was held that the gas company was entitled to recover, and in discussing the case, used the following language:

"If its property had been legally assessed by McCormick but at a value too high, that board would have had power to reduce the valuation or to declare it not too high, and its decision would have been final. McCormick was authorized to make a supplemental assessment only when the taxpayer had failed to render for assessment all property subject to taxation, and, so by such supplemental assessment to reach the property not already assessed.

"The evidence and findings show that the gas company had rendered for assessment all property owned by it on January 1, 1876, and that this had been received by the justices prior to the time McCormick entered upon the dis-

charge of his duties as assessor. He attempted to revalue the property already assessed under claim that the company owned property which he classed as 'balance of capital' unassessed that was in fact but the difference between the value of the property actually owned and assessed by the company at a valuation accepted by the company satisfactory to his predecessors and approved by the commissioners' court and the value he placed on the same property. "The vice in his assessment, termed 'supplemental,' was that there was no property owned by appellee on which such an assessment could again for the same year be made, and notice or want of notice of an attempt to assess something nonexistent or not owned by the company against which the assessment was attempted was of no importance whatever."

In State v. Couts Estate (Tex. Civ. App.) 149 S. W. 281, the county attorney of Parker county instituted suit in the name of the state of Texas against the trustees of the Couts estate to recover certain taxes alleged to be due the estate in Parker county for the year 1907 by an assessment made by the tax assessor in 1910, supplemental to the original assessment made by him in 1907. The trial court found that the Couts estate for 1907 rendered all its property for taxation, and paid the taxes for that year, which in effect was to hold that the supplemental assessment of 1910 was an additional tax placed on the same property, and the court held that such attempted additional assessment was illegal, and that the action of the commissioners' court in 1907 in placing a valuation on the property of the Couts estate was res adjudicata, and we copy the following from said opinion:

"As the property claimed by plaintiff to have been unrendered for the year mentioned in plaintiff's petition was in fact rendered for taxation by the defendant for said year, the plaintiff cannot recover, and judgment should be for defendant, as the only question that this court can inquire into was as to whether or not the property alleged to have been unrendered for taxation was in fact unrendered, and as to whether or not the property was undervalued, this court has no right to inquire, as the action of the assessor and the commissioners' court, set out in conclusions of fact, is res adjudicata."

The leading case cited by plaintiffs in error is State Board of Equalization et al. v. People, 191 Ill. 528, 61 N. E. 339, 58 L. R. A. 513. This was a suit against the state board of equalization to coerce said board, forthwith, to value and assess in the manner provided by law the capital stock, including franchises of a score or more of large corporations, a majority of which corporations had not paid a franchise tax for several years previous to the filing of the suit, and a few of said corporations had paid a very inadequate franchise tax, but no attempt was made in that case to require the state board of equalization to make any assessment for prior years, but the suit was for the purpose of requiring the state board of equalization, then in session, to make an assessment for that year and for that year only.

"Taxes are defined to be burthens, or charges, imposed by 'the legislative power of a state upon persons or property, to raise money for public purposes.' " Clegg v. State, 42 Tex. 608; City of Austin v. Joseph Nalle, 102 Tex. 538, 120 S. W. 996.

"The essential requisites of a valid tax are, unquestionably, first, a legal levy by competent legislative authority; second, a valid assessment of the property upon which such tax is levied by the officer or tribunal to whom this duty is committed by law." George v. Dean, 47 Tex. 84.

"The apparent equity of any particular exaction cannot support it as a tax, unless it is made in accordance with law." Cooley on Taxation (3d Ed.) p. 4.

Both the Constitution and statutes of Texas provide that a tax is a lien upon property, and it would naturally follow that a lien upon the property of a citizen could not be fixed without his consent except by a strict compliance with the laws attempting to fix such lien. The Constitution of the state provides for the election of an assessor, whose duties are to assess property for taxes, and the statutes of the state provide how those duties shall be performed. The Constitution, art. 8, § 18, provides that the county commissioners' court shall constitute a board for the equalization of taxes, and the statutes provide how their duty in equalizing taxes shall be performed. Article 7547 provides that the county assessor shall assess all property between January 1 and April 30th of each year, and article 7564 provides for a meeting of the board of equalization on the first Monday in May for the purpose of examining the tax lists, and among other things to notify taxpayers of any intended raise of the valuation placed on their property. Articles 7569, 7570 provide for hearing proof by the board of equalization as to the value of property and for the fixing of the value by said court, and that their action in such cases shall be final. The power to equalize taxes must of necessity be placed in some tribunal, and, the Constitution having expressly placed that power in the commissioners' court, and said court having once undertaken to exercise that power, we have serious doubt as to the right of any other court to interfere, in so far as the rights of that division of the government claiming the benefit of the taxes is concerned, but, if the question shall be in doubt, then surely another court could not order the commissioners' court and the tax assessor to exercise their duties, in the assessing and equalizing of taxes, in a manner not provided by law. The Constitution and statutes provide exactly how and when taxes shall be assessed and equalized, and how the lien to secure the

payment thereof shall be fixed. The tax is for the benefit of the state or some division thereof, and the acts necessary to be performed to determine the amount of tax to be paid by each citizen are performed by officers of the state or county, and, when these officers have undertaken to perform their duties, and the citizen has paid the tax levied by the state or any subdivision thereof, and has, in the form of a tax receipt, received a release of the lien on his property, then, in view of the law that provides that the value placed on the property of the citizen by the equalization board shall be final, and in the absence of any law authorizing a further assessment, we think that any attempt to require the citizen to pay additional tax on the same property on which he has already paid is to deprive a citizen of his property without due process of law.

[3] The railway company was not a party to the suit brought by the improvement district against the tax assessor and the commissioners' court, and its rights were not affected by the judgment rendered therein, in which the first assessment was declared invalid, and said officers directed to make another assessment of the railway companies' property, and the acts of said officers, in making such new assessment, bound the railway company no more than if such suit had not been brought. The case under consideration was pleaded and tried on the basis that all the property of the railway company, within the improvement district, was included in both the original and new assessments, and in such case the railway company could not be forced to pay additional taxes under the new assessment; but if, in the method used by the commissioners' court in arriving at the value of the railway company's property, some of the property of the company was not originally assessed and proper suit should be brought seeking an assessment of, or to collect taxes on, that property, then an entirely different question would be presented, and one we are not here required to determine.

We deem it unnecessary to discuss those cases holding that, where a citizen's property has been assessed at a grossly excessive value, compared with other property, the citizen has the right to enjoin the collection of the tax, based on such excessive value, for in our opinion such cases do not apply to this case, because the rights of the citizen and the rights of the taxing body are entirely different.

We are aware that for any citizen's property to be valued for taxes at less than its value to a certain extent works a hardship on all the taxpayers of the district, but this unequal distribution of the burden of taxes comes about by the failure of the officers of the people to properly perform a duty placed on them by both the Constitution and laws of the state, and it were better that such unequal burdens be borne by the other taxpayers than for us to undertake to override the plain provisions of the law.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.