CAMERON COUNTY APPRAISAL REVIEW BOARD, Appellant,

v.

CREDITBANC SAVINGS ASSOCIATION and B.P. Newman Investment Company, Appellees.

No. 13–87–480–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 30, 1988.

Rehearing Denied Jan. 26, 1989.

Russell R. Graham, Calame, Linebarger & Graham, Austin, for appellant.

Oliver J. Butler, Jr., Brownsville, for appellees.

Before UTTER, KENNEDY and DORSEY, JJ.

## OPINION

UTTER, Justice.

Appellees, Creditbanc Savings Association and B.P. Newman Investment Co., filed suit seeking judicial review of the decision of appellant, Cameron County Appraisal Review Board, to add certain property to the 1984 Appraisal Roll. This property is an improvement known as the Palm Terrace Apartments. The trial court, sitting without a jury, found that the complained-of order issued by appellant was "contrary to law" and rendered judgment in favor of appellees. We reverse the judgment of the trial court and remand.

Pursuant to Tex.R.Civ.P. 263, the parties stipulated that the case would be submitted

1. The disputed property has been owned by Newman since September 25, 1985. However,

upon an Agreed Statement of Facts, which may be summarized as follows:

The real property which is the subject of this action consists of an improvement which is commonly referred to as the Palm Terrace Apartments and land which is legally described as Lot 4 of Block A of Treasure Hills Plaza Shopping Center Subdivision.

During the 1984 Tax Year, the land was appraised by the Cameron County Appraisal District at a total value of $175,980.00. This amount, which was placed on the 1984 Appraisal Roll, does not include any value for the apartment complex, although those improvements were located on the land and properly subject to tax in 1984.

The owner of the property during 1984 was the Jefferson Trust Company, a wholly owned subsidiary of appellee Creditbanc. Jefferson Trust timely paid the 1984 taxes which were assessed on the basis of the appraisal. Tax Certificates were issued which attested that all taxes due on the land for 1984 had been paid in full.

On January 13, 1986, the Appraisal District issued a Notice of Appraisal Value to appellee B.P. Newman Investment Company [1] which reflected a purported addition to the value of the disputed property for the 1984 Tax Year. The addition was based on "previously omitted" improvements (i.e. the apartment complex) which were appraised at $3,918,550.00, thereby raising the total value of the property to $4,094,530.00. The Appraisal District subsequently reduced the total value from $4,094,530.00 to $2,133,700.00 (including land value of $175,-980.00 and improvement value of $1,957,-720.00).

On March 6, 1986, appellees filed a Notice of protest with appellant by which they claimed that the Appraisal District "improperly reappraised and/or reassessed the [disputed property] for 1984."

On April 23, 1986, appellant issued an Order Determining Protest wherein it ruled that "the back asessment for improvements in the amount of $11,957,720.00 for

Creditbanc assumed liability for the payment of any unpaid taxes for 1984.

1984" was valid since "said improvement had been previously omitted from the appraisal roll." Appellant also issued a corrected 1984 tax bill which assessed an additional $23,492.64 in taxes on the disputed property. Appellees filed a Notice of Appeal with appellant on May 8, 1986. Appellant denied appellees appeal and suit was filed in the district court. The trial court rendered judgment for appellees.

By its first point of error, appellant asserts the trial court erred in rendering judgment for the appellees because the judgment was based on the false conclusion that the improvements were "reappraised" by appellant when, in fact, they had been completely omitted from the 1984 Appraisal Roll.

Tex.Tax Code Ann. § 25.21(a) (Vernon 1982) provides:

#### Omitted Property

(a) If the chief appraiser discovers that real property was not taxed in any one of the 10 preceding years or that personal property was not taxed in one of the two preceding years, he shall appraise the property as of January 1 of each year that it escaped taxation and enter the property and its appraised value in the appraisal records.

Appellant asserts that its Order Determining Protest was based on the Appraisal District's legitimate revaluation of omitted improvements as provided for in section 25.21, and therefore should not have been overturned by the trial court.

At the outset, it should be noted that both the original 1984 Appraisal Roll Tax Receipt and Tax Certificates which were issued specifically states that only the "*land*" value was being assessed. Appraisal Roll Tax Receipt has the word "land" typed in block designated as: "This years appraised value." The Tax Certificate shows that the Tax Certificate was issued covering the "land" only, the block indicating "improvements" was not checked. Therefore, there could be no doubt by the taxpayer that they were only paying for taxes assessed on the "land" value.

Section 1.04 of the Property Tax Code which defines the applicable terms used in the Code states:

Section 1.04.   Definitions

In this title:

(1) "Property" means any matter or thing capable of private ownership.

(2) "Real property" means:

(A) land;

(B) an improvement;

(C) a mine or quarry;

(D) a mineral in place;

(E) standing timber; or

(F) an estate or interest, other than a mortgage or deed of trust creating a lien on property or an interest securing payment or performance of an obligation, in a property enumerated in Paragraphs (A) through (E) of this subdivision.

(3) "Improvement" means:

(A) a building, structure, fixture, or fence erected on or affixed to land; or

(B) a transportable structure that is designed to be occupied for residential or business purposes, whether or not it is affixed to land, if the owner of the structure owns the land on which it is located, unless the structure is unoccupied and held for sale or normally is located at a particular place only temporarily.

The appellees rely upon the 1972 Pre–Tax Code case of *Yamini v. Gentle,* 488 S.W.2d 839 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.).

The applicable statute in effect at the time of the *Yamini* decision was article 7146 Vernons Ann.Civ.St. (1960). This statue reads as follows:

"Real property for the purpose of taxation shall be construed to include the land itself, whether laid out in town lots or otherwise and all buildings, structures and improvements, or other fixtures of whatsoever kind thereon ..."

However, the Dallas Court in *Yamini* did not discuss the separability of land and improvements as both being subject to taxation as specific entities. The Court con-

cluded that portion of its opinion by stating:

> Under the stipulation of the parties made in this case it is evident that none of these statutes is applicable for the simple reason that the real property in question had been assessed in due form on the 1968 tax rolls.

However, in our case, the parties stipulated that "said appraisal included land value only," thus agreeing that the improvements had not been appraised. If the improvements had not been appraised, they must have necessarily been omitted and Sec. 25.21(a) is applicable.

Under the new provisions of the Property Tax Code the legislature has specifically designated land and improvements and other taxable interests as separate entities of real property. This specific enumeration by the legislature appears to show the legislative intent that land and improvements are separate entities. *El Paso Central Appraisal District v. Montrose Partners,* 754 S.W.2d 797 (Tex.App.—El Paso 1988, no writ); *Republic Insurance Co. v. Highland Park Independent School Dist.,* 171 S.W.2d 342 (Tex.Comm.App.1943).

In addition, Section 25.02 of the Tax Code establishes the requirements for appraisal records. The records must include, in part, the following:

> (1) the name and address of the owner, if the name or address is unknown, a statement that it is unknown;
>
> (2) real property;
>
> (3) separately taxable estates or interests in real property, including taxable possessory interests in exempt real property;
>
> (4) personal property;
>
> (5) the appraised value of land and, if the land is appraised as provided by Subchapter C, D, or E, Chapter 23 of this code, the market value of the land;
>
> (6) the appraised value of improvements to land;

Section 25.02 requires the Tax Appraisal District to maintain the separate listing of both land and improvements. This is more than a mere bookkeeping requirement. It conforms with the definitions set forth in Sec. 1.04 and further emphasizes the legislative intent that land and improvements are separate entities of real property.

Further, the appellees contend that the improvements were not "omitted" from the 1984 Appraisal Roll; rather, they were simply given an incorrect "zero" valuation.

The stipulation in the record in paragraph (18) states:

> 18. During and for the Tax Year 1984, the Disputed Property was appraised by the Appraisal District at a total value of $175,980.00 (*said appraisal including land value only and not including any value for improvements even though improvements were located thereon*) and said appraised value was placed on the 1984 Appraisal Roll issued by the Appraisal District for the Tax Year 1984. (emphasis ours.)

It appears inconsistent for the appellees, after agreeing that the improvements were omitted from the appraisal, to now argue that such improvements were given an incorrect "zero" valuation by the Appraisal District. If that is true, then any taxpayer could argue that any omitted property was actually assessed at a zero valuation. This argument would effectively emasculate the omitted property provision. Since Sec. 25.-21 of the Tex.Prop.Code specifically provides that a back appraisal may be made for a previous tax year in which real property was not assessed, and since real property includes both land and improvements as separate entities, therefore a back appraisal of omitted improvements is applicable in the present case. The trial court erred in not allowing the improvements to be added to the 1984 Appraisal and Tax Rolls of Cameron County. Appellant's first point of error is sustained.

Since we have sustained appellant's first point of error, we will not address appellant's second and third points of error.

In its fourth point of error, appellant challenges the trial court's award of attorney's fees. Since we have sustained appellant's first point of error, attorney's fees are not recoverable. Tex.Tax Code Ann.

§ 42.29 (Vernon 1983). Appellant's fourth point of error is sustained.

The judgment of the trial court is REVERSED and REMANDED in accordance with this opinion.

DORSEY, J., files a dissenting opinion.

DORSEY, Justice, dissenting.

The issue presented by this case is whether an Appraisal Review Board may reappraise property to include a value for improvements that were omitted when the land was originally appraised and taxes paid on the basis of the original appraisal and assessment. Prior to the adoption of Title I of the Tax Code, the answer was clearly that there could be no supplemental appraisal to include the omitted improvements in the absence of fraud. The majority finds the Tax Code has changed the law to now allow the "back appraisal" of those omitted improvements. Because I do not find the Tax Code changed the prior law in this regard, I respectfully dissent.

Citing as authority *Yamini v. Gentle*, 488 S.W.2d 839 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.) and *State v. Chicago, Rock Island & Gulf Ry. Co.*, 263 S.W. 249 (Tex.1924), appellees argue that the Appraisal District, after entering its original 1984 appraisal of $175,980.00, then unlawfully "reappraised" or "back-appraised" the disputed property by adding the value of the real property improvements.

In *Chicago, Rock Island,* the Supreme Court held that once a tax assessment has been made and the assessed taxes paid on real property for a given tax year, no reassessment can be made of the property for the same tax year, even though the original assessment was for substantially less than the proper value. *Chicago, Rock Island,* 263 S.W. at 253. The Court, however, acknowledged the distinction between omitted property and reappraised property:

> The case under consideration was pleaded and tried on the basis that all the property of the railway company, within the improvement district, was included in both the original and new assessments, and in such case the railway company could not be forced to pay additional taxes under the new assessment; but if, in the method used by the commissioners' court in arriving at the value of the railway company's property, *some of the property of the company was not originally assessed* and proper suit should be brought seeking an assessment of, or to collect taxes on, that property, *then an entirely different question would be presented, and one we are not here required to determine.*

*Id.* (emphasis mine).

In *Yamini,* a reassessment of real property was attempted when the taxing authorities discovered partially completed improvements on land that had been previously assessed and for which taxes had been timely paid. The court, citing *State v. Whittenburg,* 265 S.W.2d 569, 572–73 (Tex. 1954), disallowed the reassessment because the plaintiff failed to prove fraud or other illegality which would have rendered the previous assessment void. *Yamini,* 488 S.W.2d at 842.

Before reaching its holding, however, the court addressed the issue of the applicability of Tex.Rev.Civ.Stat.Ann. art. 7207 (the predecessor the the current "omitted property" statute, Tex.Tax Code Ann. § 25.21). The court acknowledged that articles 7207, 7299, 7338, and 7846 gave the tax assessor the authority to render assessment of real property which "has not been assessed or rendered for taxation for prior years." *Yamini,* 488 S.W.2d at 841. Yet it concluded:

> Under the stipulation of the parties made in this case it is evident that none of these statutes is applicable for the simple reason that the real property in question had been assessed in due form on the 1968 tax rolls.

*Id.* In so concluding, the court implies that for purposes of determining the applicability of the "omitted property" statute, land and improvements must be treated as a single unit such that, if the unit is assessed a value, the taxing authority may not later

reassess the improvements separately.[1]

As in *Yamini*, the parties in the instant case stipulated that the disputed property was duly appraised and that the appraised value was placed on the 1984 appraisal roll. Hence, the *Yamini* decision would suggest that Section 25.21 is inapplicable here.

Nevertheless, the majority holds that this Court should not apply the *Yamini* rule because it has been modified by the adoption of the Tax Code. Two provisions of the Tax Code are relied upon to support this conclusion: section 25.02(a) prescribing the form and content of appraisal records and section 1.04 defining real property as land, an improvement or other interests.

The predecessor of section 25.02, Tex. Rev.Stat.Stat.Ann. art. 7204, did not require an itemization of the value of improvements apart from the land by the assessor. The majority holds that, since "land" and "improvements" are now treated separately for purposes of recording, they should also be treated separately (and no longer as a single unit) for purposes of applying Section 25.21. I disagree.

Although Section 25.02 requires the appraiser to state a distinct and separate value for the land and the improvements, these amounts constitute two elements in determining the value of the property. The section deals with the form and content of the records to be maintained by the appraisal district, and the section is so entitled in its heading. I construe section 25.-02 to define and describe clerical duties to be performed by the appraisal district, and not to change the substantive law as expressed by *Yamini*, to the effect that both land and improvements are but two components of one taxable property, so that the omission of improvements from the appraisal and assessment does not constitute an "omission" of property from the rolls. Had the legislature intended by enacting section 25.02 that land and improvements be assessed and taxed separately and thus sever the improvements from the land upon which they are built, it would have spoken explicitly.

Similarly, I do not find that defining improvements to be realty effectuates a departure from the traditional definition that improvements are part of the land to which they are attached as stated in former article 7146, quoted in the majority opinion.

I fail to see how the enacting of section 25.02 in any way changes the rule set forth in *Yamini*. Hence, I conclude that the Appraisal District's supplemental assessment was invalid and that the trial court correctly overturned the order issued by appellee.[2]

By allowing the separate taxation of the land and the improvements attached thereto, a number of problems may be foreseen. As such separate taxation is now allowed, will a lien for taxes attach to the improvements apart from the land, so that the taxing entity may foreclose the lien on one although taxes on the other have been fully and timely paid? To do so would result in a seizure or damaging of property for which no taxes are owing.

In the present case, there is no argument that the legislature lacked authority to provide for taxation of improvements apart from realty. Therefore, we assume that the authority exists and address the issue whether the Legislature effected such a change by the adoption of those two seemingly innocuous sections of the Code. I am not persuaded the Code may be so read.

As I would have held the trial court was correct in not allowing the taxing authority to tax improvements as a supplement to the already appraised and taxed land, I would affirm.

1. *See also* Op.Tex.Att'y Gen. No. C–781 (1966).

2. I recognize that my conclusion conflicts with the El Paso Court of Appeals' decision in *El Paso Central Appraisal District v. Montrose Partners*, 754 S.W.2d 797 (Tex.App.—El Paso 1988, no writ). I do not find that case to be controlling.