**GIFFORD–HILL & COMPANY, INC., Appellant,**

v.

**WISE COUNTY APPRAISAL DISTRICT and Wise County Appraisal Review Board, Appellees.**

**No. 2–89–189–CV.**

Court of Appeals of Texas, Fort Worth.

June 6, 1990.

Powell Popp & Ikard, and William Ikard, Patricia L. Sessa and G. Walter McCool, Austin, for appellant.

Peter W. Low, Calame, Linebarger & Graham and Russell R. Graham and Deborah S. Cartwright, Austin, Sewell & Forbis and James Forbis, Decatur, for appellees.

Before FARRIS, LATTIMORE and DAY, JJ.

## OPINION

DAY, Justice.

Gifford–Hill & Company, Inc. (taxpayer) appeals from the trial court's grant of summary judgment to Wise County Appraisal District and Wise County Appraisal Review Board (tax authorities) as well as the denial of its motion for summary judgment.

We affirm.

Taxpayer complains that the tax authorities, in appraising taxpayer's limestone reserves and placing them upon the appraisal roll, failed to comply with the provisions of the Texas Tax Code,[1] thereby rendering the assessment and taxation of taxpayer's limestone reserves illegal. The principal issue is whether the Code permits unsevered limestone rock in the ground to be appraised and taxed in a category separate and apart from the land itself.

The taxpayer produces limestone aggregate in Wise County, extracting rock from the land and processing the rock for sale. The taxpayer's real estate consists of approximately 2500 contiguous acres of open land, most of which it owns outright, the remainder of which is leased from third parties. Under the leases, taxpayer is granted the right to dig for and remove the underlying limestone.

Prior to the tax year 1987 (the year here in issue), the tax authorities had never taken any actions to appraise and place on the appraisal rolls the limestone reserves underlying the real property owned and in part leased by taxpayer. Prior to 1987, the tax authorities had simply appraised the taxpayer's land by utilizing a "land schedule" which was a compilation of sales prices of similarly sized and situated tracts of real estate. For the tax year 1986, the year immediately preceding the year here at issue, the tax authorities appraised the taxpayer's land without reference to the value of the underlying limestone deposits and arrived at a valuation of $800 per acre. The land was placed on the appraisal roll at a substantially smaller figure than $800 per acre by reason of the taxpayer obtaining an "agricultural use exemption" pursuant to section 23.51, et seq., of the Code.

For the tax year 1987, the tax authorities retained an outside appraisal firm to place a value on the limestone reserves owned by taxpayer. The outside appraisal firm placed a value of approximately $10 million on taxpayer's reserves and the taxpayer was notified that its "rock reserves" had been appraised at $10 million for the 1987 tax year. In a separate appraisal notice from the tax authorities, the taxpayer was notified that its "land" appraisal for 1987 remained at $800 per acre, as it had been in 1986. After receiving the two appraisal notices from the tax authorities, taxpayer began pursuing its administrative remedies available under the provisions of the Code by appeal to the tax authorities review board.

Before the review board taxpayer complained that its limestone reserves had been subjected to a "multiple appraisal" in that the value of its limestone reserves had been appraised as a part of both the "land" appraisal and the "rock reserve" appraisal. Taxpayer also complained that the "rock reserve" appraisal was excessive. After hearing, the tax authorities review board reduced the "rock reserve" valuation from $10 million to $7.5 million, but rejected

1. TEX.TAX CODE ANN. All further references in this opinion to the Tax Code are denoted "Code."

taxpayer's complaint that its reserves had been subjected to a multiple appraisal.

In compliance with the Code, taxpayer then instituted the present suit in district court, complaining of the alleged failure of the tax authorities to comply with the Code. In its trial court pleadings taxpayer complained that the tax authorities had illegally, in contravention of the Code, subjected taxpayer's property to a multiple appraisal by placing both the "land" appraisal and the "rock reserve" on the appraisal rolls. Taxpayer initially complained that the $7.5 million valuation of its limestone reserves was excessive, but later abandoned such contention and now concedes that its limestone reserves are properly valued at $7.5 million. After substantial discovery, both sides moved for summary judgment. The trial court granted the tax authorities' motion and denied the taxpayer's motion. Taxpayer is before this court appealing both from the grant of summary judgment to the tax authorities as well as the denial of its motion for summary judgment.

In its first two points of error, taxpayer contends that the grant of summary judgment against it cannot be sustained because of the existence of a genuine issue of material fact as to whether the tax authorities had in fact performed a "multiple appraisal" of taxpayer's limestone reserves.

■ In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); TEX.R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded

and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex. 1984); *Farley v. Prudential Ins. Co.,* 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the non-movant and any doubts resolved in his favor. *Montgomery,* 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American,* 391 S.W.2d at 47.

■ If such uncontroverted evidence is from an interested witness, it cannot be considered as doing more than raising a fact issue, unless it is clear, direct, positive, and free from inconsistencies and contradictions. *Id.; see also Beaumont Enter. & Journal v. Smith,* 687 S.W.2d 729, 730 (Tex.1985); *Americana Motel, Inc. v. Johnson,* 610 S.W.2d 143 (Tex.1980) (per curiam) (affirming a summary judgment based solely upon the uncontroverted testimony of an interested party). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of his cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

■ Taxpayer argues that a genuine issue of material fact exists as to whether or not the tax authorities appraised taxpayer's limestone reserves both as a part of the "land" appraisal and by the "rock reserve" appraisal. In its effort to convince us of the existence of a genuine issue of material fact taxpayer cites us to certain isolated questions and answers from depositions in the record. A careful reading of the depositions from which isolated excerpts were taken places the testimony in proper context and leads us to conclude that no genuine issue of material fact exists with reference to the taxpayer's limestone reserves having been appraised in both the "land" appraisal and the "rock reserve" appraisal.

The record upon which the trial court granted summary judgment reflected that prior to the tax year 1987, the tax authorities had never appraised the limestone reserves owned by taxpayer. All appraisals

of the taxpayer's property in Wise County prior to the year 1987 were made on the basis of land schedules which generally reflected the value of the surface estate without consideration being given to the limestone reserves underlying such properties. The appraiser, Jett, clearly testified that the "land" appraisal that he performed on taxpayer's land in 1987 and all previous years was made without reference to the value of any underlying limestone reserves. Jett repeatedly avowed his ignorance concerning the value of such limestone reserves and proclaimed his inability to estimate or value such reserves.

The record reflects that the tax authorities retained an independent appraisal firm (T.Y. Pickett) to appraise taxpayer's limestone reserves for the 1987 tax year. The outside Pickett appraisal was initially in the amount of $10 million for the value of taxpayer's "rock reserves." The taxpayer now agrees that its limestone reserves are properly valued at $7.5 million.[2]

The testimony of the witnesses clearly and without contradiction established that neither the "land" appraisal for 1986 nor the "land" appraisal for 1987 reflected any value for the limestone reserves owned by taxpayer. Further, the testimony is clear that the tax authorities had never appraised the limestone reserves until the outside appraisal made for the tax year 1987. The tax authorities' chief appraiser testified that responsibility for the appraisal of taxpayer's surface estate was assigned to an employee of the tax authorities (Jett) and that the responsibility for the limestone reserve evaluation was assigned to the outside appraisal firm (Pickett). The witness for the outside appraisal firm clearly testified that his firm had appraised the limestone reserves apart and separate from the value of the surface estate.

Based upon our careful reading of the record before the trial court, we hold that the clear and uncontroverted testimony reflects that the tax authorities were in compliance with the Code in appraising taxpayer's property and including it on the appraisal roll.[3] Taxpayer's points of error one and two are overruled.

In its third point of error, taxpayer complains of the trial court's refusal to render a declaratory judgment on the matters in dispute between the parties.

Taxpayer instituted the present action in accordance with the appeal procedure set forth in section 42.21 of the Code. Its pleadings before the trial court allege that the actions of the tax authorities were illegal in that they contravened the provisions of the Code. In addition, the taxpayer sought a declaratory judgment of the trial court with reference to the actions of the tax authorities. In its summary judgment against the taxpayer, the trial court made numerous findings adjudging the legality of the tax authorities' actions. The findings of the trial court contained in the summary judgment were:

1. All limestone reserves imbedded on or below the surface of Plaintiff's land are real property and, as such, are taxable under Texas law. The property in this suit which is owned by Plaintiff is taxable under each of the following provisions: Sections 1.04(2)(A), (C), (D), and (F) respectively, of the Property Tax Code.

2. Since the limestone reserves are taxable, Defendants acted in accordance with Texas law in listing said

---

2. Taxpayer also admits in its brief and argument before this court that its limestone reserves are legally taxable (as opposed to being exempt). Since the $7.5 million valuation ascribed to its limestone reserves is uncontested, taxpayer is reduced in this point of error to arguing that the "manner" in which the tax authorities included the value of such reserves on their appraisal roll contravened the provisions of the Code; i.e., this valuation was included in the "land" appraisal and also in the "rock reserves" appraisal.

3. Although the judgment of the trial court does not specifically find that taxpayer's limestone reserves were *not* subjected to a multiple appraisal, the finding that the tax authorities were in compliance with the Code is an implicit rejection of taxpayer's contention, since to appraise and list the taxpayer's limestone in two separate categories ("land" and "rock reserves") would be a *per se* violation of the Code.

property on the Wise County appraisal roll.

3. The description of Plaintiff's limestone as "rock reserves" did not invalidate Defendants' appraisal or assessment.

4. The value of the limestone reserves found on certain acreage leased by Plaintiff for quarrying purposes was properly taxed to Plaintiff.

5. The value of the limestone reserves was not in dispute.

6. Defendants' actions complied with all due process owed to Plaintiffs.

7. Defendants actions did not violate the requirement that taxation be equal and uniform.

8. No genuine issues of material fact exist in this case.

9. Defendants' Amended Motion for Summary Judgment is granted and Plaintiff's Amended Motion for Summary Judgment is denied.

10. All relief requested by the parties to this action which was not specifically granted by this Judgment is denied.

11. All motions which are pending before this Court under this cause number are dismissed as moot.

12. Plaintiff's requests for declaratory relief are denied as no action could lie due to the exclusive remedies provided by the Tax Code; Defendants' requests for declaratory relief are dismissed as moot.

After the entry of judgment, taxpayer moved for a new trial and for modification of the court's order. In those motions, taxpayer did not complain of the trial court's failure to respond to its requests for declaratory findings. A careful comparison of taxpayer's requests for declaratory findings with the trial court's findings clearly reflects that all matters in controversy between the parties were adjudged and set at rest. For this reason, we need not address the tax authorities' contention that the taxpayer was not entitled to adjudication under the provisions of the Declaratory Judgment Act as well as the Code.

The trial court's findings contained in the judgment adequately responded to taxpayer's request for declaratory findings. Taxpayer's point of error three is overruled.

■ In its fourth point of error, taxpayer complains that the trial court erred in dismissing its case without granting it an opportunity to amend its pleadings.

In support of this point of error, taxpayer argues that the judgment in favor of the tax authorities "can only be characterized ... as a ruling that [taxpayer] did not state a cause of action for which the court could grant relief." Taxpayer further argues that the tax authorities had a *duty* "to point out the defect with particularity so that the pleading might be amended to cure the defect," and that the failure to do so constituted reversible error.

■ We recognize that it would have been improper for the trial court to grant summary judgment against the taxpayer because its pleadings failed to state a cause of action. However, we do not agree with the taxpayer's characterization of the trial court's ruling. The taxpayer sued claiming that the actions of the tax authorities violated the Code. No dispute existed as to what actions the tax authorities had taken. The only dispute existed as to whether such actions violated the Code. Matters of statutory construction are questions of law for the court to decide. *Johnson v. City of Fort Worth*, 774 S.W.2d 653 (Tex.1989). Clearly, had taxpayers' interpretation of the Tax Code been accepted, its pleadings clearly stated a valid cause of action. The trial court ruled against the taxpayer's theory of the case based upon its construction of the applicable law.

Taxpayer's fourth point of error is overruled.

In its fifth point of error, taxpayer complains that the trial court erred in denying its motion for summary judgment. Taxpayer based its motion for summary judgment upon the alleged failure of the tax authorities to comply with the Code. Section 1.04 of the Code classifies tangible property as either real or personal property and provides:

(2) "Real property" means:

(A) land;

(B) an improvement;

(C) a mine or quarry;

(D) a mineral in place;

(E) standing timber; or

(F) an estate or interest, other than a mortgage or deed of trust creating a lien on property or an interest securing payment or performance of an obligation, in a property enumerated in Paragraphs (A) through (E) of this subdivision.

TEX. TAX CODE ANN. sec. 1.04 (Vernon 1982).

Taxpayer contended in its motion for summary judgment that its limestone reserves were as a matter of law encompassed by subsection (A) land; that the separate listing and appraisal of limestone apart from land violated the Code; that limestone is not a mine or quarry under subsection (C) above; and that limestone is not a mineral in place under subsection (D) above.

In its order granting summary judgment on behalf of the tax authorities and denying the taxpayer's motion for summary judgment, the trial court specifically held that taxpayer's limestone reserves were real property and, as such, were taxable under subsections (A), (C), (D), and (F) of section 1.04(2) of the Code. Taxpayer's burden in establishing error in the court's denial of its motion for summary judgment required taxpayer to prove as a matter of law that its limestone reserves were not taxable under any of the categories set forth in section 1.04 of the Code.

Since the trial court found that taxpayer's limestone reserves were legally taxable under four separate categories listed in the Code, we shall consider the propriety of the trial court's findings with respect to each category.

With respect to subsection (A) "land," the entire thrust of taxpayer's contention throughout this litigation has been to the effect that its limestone reserves are an integral part of its land and cannot be listed, appraised or taxed separately from the category (A) "land" under the Code.

Since taxpayer concedes that its limestone reserves are properly taxable (as opposed to being exempt from taxation) and further concedes that its limestone reserves have been properly valued at $7.5 million, the thrust of taxpayer's argument on appeal is to the effect that had the tax authorities properly appraised its limestone reserves as a part of the "land" appraisal, such a combined appraisal would be legal and taxpayer would have paid taxes on the combined appraisal. Taxpayer further insists that the real property classifications reflected in section 1.04 of the Code are "mandatory" and therefore, tax authorities' separate listing and appraisal of taxpayer's limestone reserves constituted a clear violation of the Code.

■ Taxpayer narrowly interprets section 1.04 of the Code to mean that tax authorities must list property on the appraisal roll under the *exact* words of the Code, or that the property will not be subject to taxation. Taxpayer contends that this proposition was established by the case of *Cameron County Appraisal Review Board v. Creditbanc Savings Ass'n,* 763 S.W.2d 577 (Tex.App.—Corpus Christi 1988, writ denied). In *Creditbanc,* the taxes had been paid on the land but the tax authority was not informed that buildings located on the land had been omitted from the appraisal. When the tax authority discovered the error, the omitted buildings were placed on the tax roll and back-assessed for the taxes lost on the omitted value. Creditbanc argued that the buildings were a part of the land; thus, once taxes were paid on the value of the "land," no other component of the real property (such as the omitted buildings) could ever (later) be appraised or assessed for further taxes. The Corpus Christi court rejected that argument and held that a building is an "improvement," which is a taxable category of real property, separate and apart from the land. The Corpus Christi court did not state that the building must be called "improvement" to be appraised and taxed. The court's practical ruling that "improvements" are taxed separately from "land" does not suggest to us that the

court was holding that the building had to be listed as an "improvement" or else it would be exempt from taxation.

Taxpayer's strained construction of section 1.04 of the Code is patently unsound. Under taxpayer's construction of section 1.04, tax authorities who listed "buildings" on their appraisal roll rather than using the statutory term "improvements" would be acting in contravention of the Code and be unable to collect taxes on the assessed value of the building. Carried to its logical conclusion, taxpayer's contention as to the meaning of section 1.04 of the Code would invalidate all appraisals not specifically described in the words of one of the categories in section 1.04. Taxpayer thus argues that since "rock reserves" are not listed as a category under section 1.04, they, in effect, may not be appraised and taxed.

■ Taxpayer further advances the argument that its limestone reserves do not constitute a "mineral in place" as listed in the Code. Taxpayer contends that its limestone is not a "mineral" and cites us to *Moser v. U.S. Steel Corp.*, 676 S.W.2d 99 (Tex.1984), holding that sand, gravel, clay, limestone, caliche, and similar substances are considered an integral part of the land and as a matter of law, are not "minerals" in the ordinary meaning of the word. All of the cases cited by taxpayer that would seem to exclude limestone from being a mineral are cases involving private conveyances of oil and gas leases to mineral producers. In those cases, the courts have found that leases conveying "oil, gas and other minerals" do not convey the rights to minerals such as lignite or limestone. *See Moser*, 676 S.W.2d at 102; *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994 (1949). We find that the rationale for these cases is to protect an uninformed landowner from conveying away "mineral rights" under the assumption that the lessee will simply drill for oil or gas and plug the hole when finished rather than permit the lessee to destroy the surface of his land by mining or quarrying unless such rights are specifically granted under the mineral lease. This rationale was set forth in *Schwarz v. State of Texas*, 703 S.W.2d 187

(Tex.1986), where it was stated if it is unclear exactly what substances a conveyance of "minerals" will actually include, a Court will presume that the parties intended to convey only those minerals which would entitle each party to full enjoyment of its respective estate. *Id.* at 189. The rule will not be applied if there is an express conveyance of a specific substance or some other controlling rule of construction. *Id.* There is no question that, scientifically speaking, limestone is a "mineral." Taxpayer failed to meet its burden in showing that its limestone reserves, as a matter of law, could not be a "mineral in place" under section 1.04 of the Code.

■ Taxpayer next attacks the trial court's finding that its limestone reserves would be taxable under the category (C) of section 1.04(2) as "a mine or quarry." In support, taxpayer cites the court to dictionary definitions of both "mine" and "quarry."

Webster's Ninth New Collegiate Dictionary defines "mine" as follows:

> 3mine/'min/ n[ME, fr. MF, fr. OF] (14c) 1 a: a pit or excavation in the earth from which mineral substances are taken b: *an ore deposit* ... 4 *a rich source of supply* .... [Emphasis added.]

> 4mine/min/ vb mined; mining vt (14c) ... 2 to get (as ore) from the earth ... 5 a: to dig into for ore or metal b: to process for obtaining a natural constituent (the air for nitrogen) c: to seek valuable material in—to dig a mine—miner n.

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 755 (1983).

Webster's Ninth New Collegiate Dictionary defines "quarry" as follows:

> 2quarry n, pl quarries [ME quarey, alter. of quarrere, fr. MF quarriere, fr. (assumed) OF quarre squared stone, fr. L. quadrum square] (15c) 1: an open excavation usu. for obtaining building stone, slate, or limestone 2: *a rich source.* [Emphasis added.]

> 3quarry vb quarried; quarrying vt (1774) 1: to dig or take from or as if from a

quarry (marble) 2: to make a quarry in (a hill) vi: to delve in or as if in a quarry *Id.* at 964.

From these definitions, taxpayer draws the conclusion that the term "a mine or quarry" as used in section 1.04 of the Code is limited to the open working excavation in the earth's surface. We hold that taxpayer's construction of the terms "a mine or quarry" is illogically narrow. To accept taxpayer's contention would compel us to the ridiculous conclusion that a mine or quarry simply means the hole left after the mineral has been removed. The dictionary definitions advanced by taxpayer themselves state that a mine is "an ore deposit ... a rich source of supply," and that a quarry is "a rich source."

We overrule taxpayer's fifth point of error.

In its final two points of error, six and seven, taxpayer complains the trial court erred in both granting summary judgment to the tax authorities and denying summary judgment to the taxpayer with reference to those limestone reserves owned by taxpayer on its leased acreage.

Taxpayer argues that section 25.06 of the Code requires that property which is encumbered by a leasehold or *other* possessory interests be listed in the name of the owner of the property so encumbered.

Since the trial court's order approved the listing of taxpayer's limestone reserves on its leased acreage in taxpayer's name, we must examine taxpayer's contention that Code section 25.06 mandated that taxpayer's limestone reserves be listed under the name of the property owner. Taxpayer contends that its interest in the limestone is "possessory" and that the tax burden should be shifted to the lessor.

We note that section 1.04(16) of the Code provides that "possessory interest" does *not* include an interest, whether of limited or indeterminate duration, that involves a right to exhaust a portion of a real property. Since taxpayer's leases give taxpayer the right to destroy the surface of the leased property by quarrying the limestone resulting in the consumption, depletion and destruction of the surface of the land, we hold that taxpayer's interest is not a "possessory interest" as set forth in Code section 25.06.

In rejecting taxpayer's argument that the trial court's judgment approved action of the tax authorities in contravention of Code section 25.06, we also rely on Code section 25.17. The last cited section carefully describes how to appraise leased property which may be removed by surface mining or quarrying from a deposit. This section clearly evidences that the Code considered the surface estate and a quarrying operation to be separately taxable, with each owner to pay its own share.

Taxpayer's sixth and seventh points of error are overruled.

The judgment of the trial court is affirmed.

LATTIMORE, J., not participating.