**P. E. DICKISON, Assessor-Collector of Taxes, et al., Appellants,**

**v.**

**WOODMEN OF THE WORLD LIFE IN-SURANCE SOCIETY, Appellee.**

**No. 12824.**

Court of Civil Appeals of Texas.

San Antonio.

May 18, 1955.

Rehearing Denied June 15, 1955.

Austin F. Anderson, Dist. Atty., Carlos Cadena, City Atty., J. Bruce Aycock, Asst. Dist. Atty., Brewer, Matthews, Nowlin & Macfarlane, Pat Swearingen, Jr., Greathouse & Zuercher, San Antonio, for appellants.

L. M. Bickett, San Antonio, for appellee.

PER CURIAM.

This suit is the consolidation of two suits, one brought by Woodmen of the World Life Insurance Society, a Nebraska corporation authorized to do business in this State as a fraternal benefit society under the provisions of Chapter 8, Title 78, R.C.S., 1925 (now Chapter 10, Vernon's Ann.Tex.Stats., Insurance Code), against certain taxing authorities, seeking to have a tract of land consisting of some 309 acres, located within the territory of such taxing authorities and fully described in its pleadings, exempt from taxation during the time the land is or was owned by it, and for permanent injunction, and the other suit is by such taxing authorities, seeking to collect taxes against this property. The taxing authorities involved are: State of Texas, County of Bexar, City of San Antonio and Alamo Heights Independent School District.

The trial was before the court without the intervention of a jury and resulted in judgment sustaining the contention of the Woodmen of the World Life Insurance Society, to the effect that such property was and is exempt from taxation, declaring all attempts to levy and collect taxes against such property by such taxing authorities to be null and void, and permanently enjoining them from collecting any such taxes during the time the subject property was or is owned by Woodmen of the World Life Insurance Society. It appears that the Society had sold all but 50 acres of its land and the judgment, insofar as the land sold is concerned, is made effective only during the time it was owned by the Society.

Appellee undertakes to support its claimed exemption from taxation of its property by the provisions of Sec. 2 of Article 8 of the Constitution of Texas, Vernon's Ann. St., and Articles 4858 and 4858a, Vernon's Ann.Civ.Stats. (now Art. 10.39, Vernon's Ann.Tex.Stats., Insurance Code). Appellee asserts no tax exemption under the provisions of Art. 7150, subd. 7, Vernon's Ann. Civ.Stats., which exempts property owned and used by institutions of purely public charity and defines, for the purposes of that Article, what is meant by institutions of purely public charity.

■■ There are other provisions of the Constitution relating to exemption from the burden of taxation of property, but the only constitutional provision here involved is Sec. 2, Art. 8. Two things are apparent from a reading of this constitutional provision: First, that the section itself does not exempt any property from taxation, but only authorizes the Legislature to do so by general laws, and, second, while the Legislature may restrict the exemption, it may not broaden it beyond the constitutional confines, and any attempt to do so would be null and void.

The effect of Art. 4858 and Art. 4858a (now Art. 10.39, Vernon's Ann.Tex.Stats., Insurance Code) is to declare all property of fraternal benefit societies organized or licensed under Chapter 8 of Title 78, R.C.S., 1925, now Chapter 10, Vernon's Ann.Tex. Stats., Insurance Code, to be exempt from taxation, except real estate and office equipment used for other than lodge purposes, and to declare such societies to be charitable and benevolent institutions.

Thus we come to the question: Does the legislative declaration operate to exempt the subject property from taxation? The pertinent portions of Art. 8, Sec. 2, provide that, "the legislature may, by general laws, exempt from taxation * * * all buildings *used exclusively and owned* by * * * institutions of purely public charity; and all laws exempting property from taxation other than the property above mentioned shall be null and void." (Italics ours.)

■ Whether a society is an institution of purely public charity is essentially a question of fact. This matter is made clear by the opinion of the Supreme Court in the

recent case of Texas Turnpike Co. v. Dallas County, Tex., 271 S.W.2d 400, 402, wherein the Supreme Court had under consideration Art. 11, Sec. 9, of our Constitution, and Article 6674v, Vernon's Ann.Civ.Statutes. The effect of Art. 11, Sec. 9, among other things, is to declare property owned by counties, cities and towns, and used for public purposes, to be free from taxation. Art. 6674v, supra, provides, among other things, that all property of Texas Turnpike Authority, created under its provisions, is public property used for public purposes. Mr. Justice Calvert, speaking for the Supreme Court of this State, had this to say:

"Under the foregoing facts is the property in question 'publicly owned' so as to be exempt from taxes under Article XI, Section 9 of the constitution? Public ownership, for tax-exemption purposes, must grow out of the facts; it is a legal status, based on facts, that may not be created or conferred by mere legislative, or even contractual, declaration. If the state does not in fact own the taxable title to the property, neither the Legislature by statute, nor the petitioners and the Authority by contract, may make the state the owner thereof by simply saying that it is the owner."

We believe that the principle above announced is analogous and applicable to this case. The Legislature could not by legislative fiat declare that to be true which is not in fact true, and thus enlarge the tax exemption provided for in Art. 8, Sec. 2, supra. If appellee is not in truth and in fact an institution of purely public charity, its property is not exempt from taxation, and the Legislature cannot by mere legislative fiat bring it under the provisions of Art. 8, Sec. 2, supra.

The subject property was not owned by a separate entity, such as a hospital association, it was owned exclusively by appellee, Woodmen of the World Life Insurance Society, and could be disposed of at any time by it, as was done here, with the exception of 50 acres. It becomes immaterial as to what use the property was put, if ap-

pellee was not an institution of purely public charity, as the property must not only be used but it must be owned by such an institution. Sec. 2, Art. 8, supra; Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 68 Tex. 698, 5 S.W. 519; City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978; City of Palestine v. Missouri-Pacific Lines Hospital Ass'n, Tex.Civ.App., 99 S.W.2d 311; Santa Rosa Infirmary v. City of San Antonio, Tex.Com. App., 259 S.W. 926, reversed Tex.Civ.App., 249 S.W. 498; Hedgecroft v. City of Houston, 150 Tex. 654, 244 S.W.2d 632; Smith v. Feather, 149 Tex. 402, 234 S.W.2d 418; Little Theatre of Dallas v. City of Dallas, Tex.Civ.App., 124 S.W.2d 863.

The trial court has made elaborate findings of fact covering some seventeen pages of the transcript. These findings are unchallenged by either party and are binding upon us here. They show conclusively that appellee is not an institution of purely public charity, even though under the provisions of its charter it is authorized, among other things, to operate a hospital. The fact that appellee's charter authorizes it to engage in the life insurance business upon a contractual basis, which it does, renders it an institution not of purely public charity. All of the property here involved belongs, or did belong, to appellee and has never been irrevocably dedicated to charity.

As above pointed out, it is not sufficient that the use be charitable, but the property must also be owned by an institution of public charity. The reason for this dual requirement is believed apparent. The granting of tax exemption involves a balancing of factors affecting the public good. Our Constitution has fixed this balance by requiring a perpetual dedication of the property and the various mutations thereof to charitable purposes. This is roughly equivalent to saying that the Constitution requires that not only must the use be charitable, but also that the property or proceeds thereof, when the particular use ceases, shall likewise be dedicated to a charitable use; hence the requirement of ownership by an institution of purely public charity. By way of example, we may

take the facts disclosed by the record in this case: From 1922 to 1927, appellee purchased a total of 210 acres of land in the rural section of Bexar County, north and east of the City of San Antonio, for use in connection with its hospital. In 1945, a further tract of 99.82 acres was added to the property, making an aggregate of 309.82 acres, for which a total of $145,176.45 was expended. This acreage was used for pasturing livestock and raising foodstuffs for the support of the hospital.

By reason of the growth of the City of San Antonio, and consequent real estate development in the area surrounding the hospital, the neighborhood ceased to be rural in character and real property located therein became valuable for residential, subdivision and other urban purposes. Appellee, accordingly, decided to sell all of its property, except 50 acres where the hospital building, chapel and other structures are located. The method of operation of the hospital was changed, in that the dairy herd was disposed of and other sources of obtaining milk products and foodstuffs were devised. For the sale of slightly more than 259 acres, appellee realized a total of approximately $400,000.

The holding of land by tax exempt charities generally results in the land's increasing in value because of the increase in population and consequent change in the environs of the property. The Constitution requires that this increment be dedicated to charity. In the case of certain institutions, such as religious and educational organizations, the theory of benefit to the public good in allowing tax exemptions is fairly clear, as there is a sound basis for believing that this increment in whatever form it may be, will continue to be used for charitable purposes. In the case of other organizations this dedication may not be so clear. The appellee fraternal society here involved is authorized and bound to use its assets (and the increment realized from a sale of its land as an asset of the society) for the following purposes, as stated in appellee's brief: "(1) *paying its benefit certificates when payable;* (2) defraying its operating expenses; and (3) carrying on its charitable and benevolent undertakings." Refunds may be made to members of the society of portions of assessments collected in excess of the amount necessary to carry out the foregoing functions.

The question is then narrowed to the inquiry of whether or not an association or society which is authorized to issue benefit certificates in the nature of life insurance on a contractual basis and apply its assets acquired from assessments or any other source to the payment of such certificates, can reasonably be classified as an institution for the accomplishment of "ends wholly benevolent". City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978, 981.

Under the Texas decisions, despite the attempted legislative classification, it must be held that such ends are not wholly benevolent and such an organization as here involved is not an institution of "purely public charity" within the constitutional definition. Farmer v. State, 69 Tex. 561, 7 S.W. 220; Concho Camp, No. 66, W.O.W. v. City of San Angelo, Tex.Civ.App., 231 S.W. 1106, 1109. In the case last cited it was directly held that an organization which issues insurance policies to its members is not an institution of purely public charity. It was further held, on authority of Farmer v. State, supra, that a benefit certificate similar to a life insurance policy issued upon a contractual consideration, was " 'a contract of insurance, no matter by what name it may be called.' "

It follows that the Act of the Legislature insofar as it purports to exempt the property of appellee from taxation is inoperative, because appellee is not an "institution of purely public charity".

The judgment of the trial court is reversed and the cause remanded to the trial court for further proceedings in accordance with this opinion.