

# The Attorney General of Texas

October 26, 1984

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4£24 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

8C6 Broadway, Suite 312
Lubbock, TX. 79401-3473
8C6/747-5238

4309 N. Tenth. Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employe·

Honorable Mike Driscoll
Harris County Attorney
1001 Preston, Suite 634
Houston, Texas    77002

Opinion No.  JM-221

Re:  Whether section 11.431 of
the Tax Code permits refunds of
taxes for homestead exemptions
not filed in time

Dear Mr. Driscoll:

You ask the following question:

> May the Harris County tax assessor-collector
> accept an application for a residence homestead
> for the year 1981 which is submitted to the tax
> assessor-collector prior to February 1, 1983, or
> within one year after the 1981 taxes on said
> residence were paid, whichever is earlier, and
> refund to the applicant the difference between the
> amount paid and the amount that would have been
> due if the homestead application had been sub-
> mitted prior to May 1, 1981?

Section 11.43 of the Tax Code requires initial applications for
residence homestead exemptions to be filed prior to May 1. The
section also permits a 60-day extension. In 1981, the legislature
amended the Tax Code by adding section 11.431, which provides:

> (a) The chief appraiser shall accept and
> approve or deny an application for a residence
> homestead exemption after the deadline for filing
> it has passed if it is filed not later than one
> year after the date the taxes on the homestead
> were paid or became delinquent, whichever is
> earlier.

> (b) If a late application is approved after
> approval of the appraisal records by the appraisal
> review board, the chief appraiser shall notify the
> collector for each unit in which the residence is
> located. The collector shall deduct from the
> person's tax bill the amount of tax imposed on the
> exempted amount if the tax has not been paid. If

the tax has been paid, the collector shall refund
the amount of tax imposed on the exempted amount.

The effective date of section 11.431 was January 1, 1982.  Acts 1981,
67th Leg., 1st C.S., ch. 13, §168, at 182.  You wish to know whether
section 11.431 permits late applications for residence homestead
exemptions beginning with the 1981 tax year or the 1982 tax year.
Since you raise no constitutional issue, we raise none here.  We
conclude that section 11.431 permits the filing of late applications
beginning with the 1982 tax year.

The guiding principle of statutory interpretation is the
ascertainment of legislative intent.  State v. Shoppers World, Inc.,
380 S.W.2d 107 (Tex. 1972); State v. Jackson, 376 S.W.2d 341 (Tex.
1964).  We conclude for two different reasons that the legislature
clearly intended for section 11.431 of the Tax Code to become
effective beginning with the 1982 tax year.

First, the legislature clearly could not have intended for only
one section of the Tax Code's administration of exemptions provisions
to take effect and reach taxes implied in a year earlier than that in
which the remaining sections take effect.  Subsection (a) of section
11.431 requires the chief appraiser to accept and approve or deny an
application for a residence homestead exemption if it is filed within
a specified time.  Subsection (b) provides that, if a late application
is approved after approval of the appraisal records by the appraisal
review board, the chief appraiser must notify the collector for each
affected taxing unit.  The collector is then required to recalculate
the taxpayer's tax liability if the tax has not yet been paid; if the
tax has been paid, the collector is required to refund the amount of
tax on the exempted amount.

It would make no sense for us to conclude that section 11.431
would reach the 1981 tax year, because tax appraisal districts
administered by chief appraisers came into being on January 1, 1982
with the beginning of the 1982 tax year.  Acts 1979, 66th Leg., ch.
841, §3, at 2313.  Chief appraisers never had authority to accept
exemption applications for the 1981 tax year.  Applications in 1980
and 1981 were submitted to the tax assessor-collectors for the
respective taxing units offering them.  Appraisal review boards did
not review and approve appraisal records for the 1981 tax year;
appraisal review boards were created beginning with the 1982 tax year.
Such records were reviewed in 1981 by local boards of equalization
who, unlike the appraisal review boards created after January 1, 1982,
did not possess the authority to review and approve or reject the
granting of exemptions by the local tax assessor-collectors.  Compare
repealed V.T.C.S. art. 7206 (and cases decided thereunder) and Tax
Code §§41.01, 41.02.  The legislature could not have intended that
appraisal review boards review and approve appraisal records in 1982
of 1981 tax rolls which have already been approved by local boards of
equalization.  Rather, the legislature intended for section 11.431 to

reach only tax years beginning with 1982, just as it intended the remainder of the administration of exemptions provisions, i.e., subchapter C of chapter 11 of the code, to reach only those tax years beginning with 1982.  By the very terms which the legislature employed in section 11.431, it is clear that the legislature intended the provision to become effective and reach those taxes imposed in the same year in which the rest of the new code became effective, i.e., 1982.

Second, we must construe statutes in a manner which is not forced or strained, but is supported by the words of the statute.  See Railroad Commission of Texas v. Miller, 434 S.W.2d 670, 672 (Tex. 1968).  We should, if possible, give effect to every part of a statute, Gerst v. Oak Cliff Savings and Loan Association, 432 S.W.2d 702 (Tex. 1968), and avoid adopting a construction that will render any part inoperative or superfluous.  Spence v. Fenchler, 180 S.W. 597 (Tex. 1915).

In our opinion, concluding that section 11.431 of the Tax Code permits the filing of late applications for the 1981 tax year would effectively render the section superfluous.  We believe the legislature could only have intended for the section 11.431 application extension to apply to the 1981 tax year if there was applicable during that year some filing deadline which section 11.431 could validly or effectively extend.  There was in 1980 and 1981, however, no statutory deadline.  And because we conclude that the "administrative" deadline discussed in Attorney General Opinion MW-259 (1980) would not permit the filing of an application for the 1981 tax year as late as January of 1982, we conclude that there was no non-statutory deadline which could have been extended past the January 1, 1982 effective date of section 11.431.  Since there was no deadline, statutory or otherwise, for claiming homestead exemptions for the 1981 tax year which could have been extended into 1982, section 11.431 cannot apply to that tax year.  To conclude otherwise is to conclude that section 11.431 expanded a deadline when, in 1981, there was no legal principle upon which it could validly operate to produce this effect.

In 1978, the voters of Texas added subsections (c) and (d) to article VIII, section 1-b of the Texas Constitution.  Subsection (c) created a self-executing ad valorem tax exemption of $5,000 of the market value of residence homesteads from elementary and secondary public school taxes.  It also permitted the legislature by general law to exempt from elementary and secondary public school taxes $10,000 of the market value of residence homesteads of persons who are disabled as defined by article VIII, section 1-b(b) of the constitution and who are 65 years of age or older.

In 1979, during the same session in which the Tax Code was passed, Acts 1979, 66th Leg., ch. 841, at 2217 [hereinafter Senate Bill No. 621], the legislature passed implementing legislation creating the disabled and the elderly residence homestead exemptions.

Acts 1979, 66th Leg., ch. 302, art. 7, §1, at 690 [hereinafter House Bill No. 1060]. Both bills contemplated annual filing requirements; however, Senate Bill No. 621's effective date provision section provided that subchapter C of chapter 11 of the Tax Code, the subchapter setting forth the administration of exemptions provisions, was not to become effective until January 1, 1982, even though the portions of Senate Bill No. 621 creating the exemption became effective on January 1, 1980. See Senate Bill No. 621, supra, at 2313-2315. In 1981, the legislature amended subchapter C of chapter 11 by providing essentially for a one-time-only application; this amendment became effective on January 1, 1982. Acts 1981, 67th Leg., 1st C.S., ch. 13, §§40, 168, at 131, 182. During the same session, section 11.431 was also added to subchapter C. Id. §42, at 132.

The thrust of the foregoing is that the original implementing legislation, coupled with the Tax Code, created three periods during which different requirements for filing applications for residence homestead exemptions existed. In 1979, House Bill No. 1060 controlled and required that applications be filed yearly. House Bill No. 1060 was repealed effective January 1, 1980, however, and was replaced by the Tax Code. The code implemented the constitutional exemption beginning on January 1, 1980, but it contained filing application requirements which became effective on January 1, 1982. As noted above, these requirements were amended in 1981. Acts 1981, 67th Leg., 1st C.S., ch. 13, §40, at 131. In 1980 and 1981, therefore, there were no specific statutory provisions requiring the filing of applications for exemptions, nor were there any provisions imposing a deadline for filing.

It would make sense to conclude that the legislature intended that section 11.431 permits late application for residence homestead exemptions for the 1981 tax year only if an applicant could have applied for such exemption as late as January 1, 1982. If such an application was possible, then it would arguably make sense to conclude that the legislature intended for the deadline extension to also apply to the 1981 tax year. We conclude, however, that such was not the case; whatever the deadline was for application for the 1981 tax year, January 1, 1982 was too late.

It has been suggested that Attorney General Opinion MW-259 (1980) effectively created an "administrative" filing deadline. This opinion addressed the effect of a taxpayer's failure to timely apply for a residence homestead exemption during 1980 and 1981, when there were no statutory filing requirements; it concluded that a taxpayer may become estopped to claim the exemption if his delay makes its recognition "administratively impracticable."

Attorney General Opinion MW-259 relied inter alia on Gragg v. Cayuga Independent School District, 539 S.W.2d 861 (Tex. 1976), appeal dism'd, 429 U.S. 973 (1976); Moore v. White, 569 S.W.2d 533 (Tex. Civ. App. - Corpus Christi 1978, writ ref'd n.r.e.); and Jay v. Devers, 563

S.W.2d 880 (Tex. Civ. App. - Eastland 1978, no writ). These cases concerned applicants for special ad valorem valuation of land under the "agricultural use" provisions of article VIII, section 1-d of the Texas Constitution. Article VIII, section 1-d is self-executing and contains no language regarding its administration or establishing deadlines for filing affidavits therefor. In each of the three cases cited above, however, the courts determined, by considering the entire enactment, that applications deemed "untimely" were not intended to be allowed. In Moore v. White, supra at 536, the court declared that an application for special valuation under article VIII, section 1-d filed in December was not timely and should not be accepted by the taxing jurisdiction, because the applicant "waited until after the [taxing jurisdiction's] plans of taxation were put into effect before filing her claim for exemption." In Gragg v. Cayuga Independent School District, supra at 870, the supreme court held that a taxpayer was not entitled to special valuation under article VIII, section 1-d, because the applicant "sat by and permitted the assessments to be made, the tax . . . to be prepared, and this suit for taxes to be filed against him before challenging the refusal by the tax assessor to give his land the agricultural use designation." See also, Jay v. Devers, supra; Attorney General Opinion H-988 (1977).

Where the constitution does not by its own terms exempt a particular kind of property but merely permits its exemption without prescription, the legislature may ordinarily prescribe reasonable conditions for the exemption's receipt. Dickison v. Woodmen of the World Life Insurance Society, 280 S.W.2d 315 (Tex. Civ. App. - San Antonio 1955, writ ref'd). But in this instance, as with article VIII, section 1-d, the legislature prescribed no deadlines for application during 1980 and 1981. We are therefore left with the rule set forth in Gragg, Moore, and Jay -- namely, that taxpayers may estop themselves through tardiness from claiming the benefits conferred by the constitution and statutes. In Attorney General Opinion MW-259 this office declared that a "taxpayer may become estopped to claim the exemption if his delay makes its recognition administratively impracticable" (emphasis added). The opinion did not, however, define what constitutes "administratively impracticable," saying only that each case would turn on its own facts.

In our opinion, the cases cited above, coupled with the statutes in effect during 1980 and 1981, i.e., V.T.C.S. articles 7111, 7112 (governing the authority and responsibilities of a board of equalization), indicate that in all likelihood, granting an exemption at any point after the board of equalization has certified the values on the tax roll would be "administratively impracticable." It was a rule of long standing under now-repealed articles 7111 and 7112 that once the valuation of property had been determined and entered upon the roll, the board of equalization had no power to increase or reduce such valuation. Bass v. Aransas County Independent School District, 389 S.W.2d 165 (Tex. Civ. App. - Corpus Christi 1965, writ ref'd n.r.e.); Chicago R.I. & G. Railway Co. v. State, 241 S.W. 255 (Tex. Civ. App. -

Texarkana 1922), aff'd 263 S.W. 249 (Tex. Comm'n App. 1924, judgmt adopted); Attorney General Opinion H-988 (1977). At the very least, relying on Gragg, Moore, and Jay, we believe we can safely state that an application is untimely if it is filed as late as December of the tax year in which the benefit is sought. In this instance, then, we conclude that an applicant who filed for a residence homestead exemption for the 1981 tax year as late as January of 1982 would not be entitled to receive the benefits of the exemption for 1981. Accordingly, since the granting of any application for a residence homestead exemption for 1981 would, at least after December 31, 1981, be "administratively impracticable," we conclude that the legislature could not have intended for the section 11.431 application extension to apply to the 1981 tax year. Thus, section 11.431 of the Tax Code could reasonably permit only the granting of refunds and the filing of late applications for residence homestead exemptions beginning with the 1982 tax year.

## S U M M A R Y

Section 11.431 of the Tax Code permits the granting of refunds and the filing of late applications for residence homestead exemptions beginning with the 1982 tax year.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Susan Garrison
Jim Moellinger
Nancy Sutton