Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# OPINION

No. 04-11-00337-CV

Bobby and Joyce **SEGUIN**,
Appellants

v.

**BEXAR APPRAISAL DISTRICT**, Appraisal Review Board, and Michael Amezquita,
Individually,
Appellees

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-11323
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:       Karen Angelini, Justice
               Sandee Bryan Marion, Justice
               Phylis J. Speedlin, Justice

Delivered and Filed:  May 16, 2012

AFFIRMED

Having discovered that Bobby Seguin was no longer a Texas resident, the Bexar Appraisal District removed the disabled veteran tax exemption from property owned by Bobby Seguin and his wife. The Seguins appeal the trial court's orders granting summary judgment in favor of the Bexar Appraisal District, the Appraisal Review Board, and Chief Appraiser Michael Amezquita. The following issues are presented in this appeal:

(1) Does the tax exemption for disabled veterans under section 11.22 of the Texas Tax Code apply to non-resident disabled veterans?

(2) Does the Texas Constitution's provision regarding the disabled veteran tax exemption create a vested property right?

(3) Is section 11.22 unconstitutional because the Texas Legislature had no authority to limit the exemption to disabled veterans who are residents of Texas?

(4) Does section 11.22 violate Bobby Seguin's equal protection rights?

(5) Does section 11.22 violate Bobby Seguin's due process rights?

(6) Are the District and Amezquita equitably estopped from removing the disabled veteran exemption from the Seguins' property?

(7) Can the Seguins bring non-tax code claims?

(8) Should the trial court have granted summary judgment on claims against Amezquita in his individual capacity?

We affirm.

## BACKGROUND

Bobby Seguin is a 100% permanently disabled U.S. Army veteran, certified as such under the criteria used by the United States Veterans Administration. In 1983, Bobby and his wife Joyce purchased the home located at 6102 Topcroft in San Antonio, Texas. In 1984, Bobby applied for and obtained a disabled veteran exemption from taxation of a portion of the assessed value of the property as provided for by section 11.22 of the Texas Tax Code. In 1990, Bobby moved to Alabama and has been a resident there since. As his disability ratings increased, he applied for and obtained increased exemptions from the Bexar Appraisal District. Some of these increases were obtained after he moved to Alabama and were effectuated by correspondence to and from the District through the mail.

In 2009, under the direction and supervision of Chief Appraiser Amezquita, the District conducted a review of exemptions, looking for property accounts with exemptions where the

owner's mailing address differed from the subject property's address. On February 24, 2009, the District sent the Seguins a letter requesting information and an explanation as to why they had a mailing address different from their parcel at 6102 Topcroft. On March 16, 2009, the Seguins responded in a letter, stating that they relocated to Alabama in 1990 and that their disabled niece lived at the 6102 Topcroft home. On March 18, 2009, the District sent the Seguins a letter notifying them of the removal of the disabled veteran exemption for the tax years 2004, 2005, 2006, 2007, and 2008, because Bobby Seguin was no longer a resident of Texas. On April 2, 2009, the Seguins filed their notice of protest and requested a hearing before the Appraisal Review Board. On May 19, 2009, the Seguins' hearing before the Board was held by affidavit. On June 12, 2009, the Seguins received the Board's order, which denied their protest and affirmed the District's decision to remove the disabled veteran exemption for tax years 2004, 2005, 2006, 2007, and 2008. On July 10, 2009, the Seguins filed their original petition for review against the District and the Board (collectively "the District"). On July 8, 2010, the Seguins filed their second amended petition, adding Chief Appraiser Michael M. Amezquita in his individual and official capacities "for unauthorized, unlawful, and/or ultra vires violations of law in unilaterally removing [the Seguins'] disabled veteran's exemption for five years, and reinstating [the] property on the tax rolls at full appraised value."

The Seguins and the District filed competing motions for summary judgment. The trial court denied the Seguins' motion and granted the District's motion. Amezquita also filed a motion for summary judgment on the ground that he is not a required party, is not a proper party in his individual capacity, and is entitled to official and qualified immunity. He also argued that the Seguins' constitutional claims are prohibited. In its order granting Amezquita's motion for summary judgment, the trial court found that Amezquita was acting within the scope of his

authority as the chief appraiser pursuant to section 11.43(i) of the Texas Tax Code and is therefore entitled to official immunity as a matter of law. Thus, the trial court granted Amezquita's motion and ordered that the Seguins take nothing in the claims against him in his individual capacity. In the same order, the trial court denied the Seguins' motion for summary judgment against Amezquita. The Seguins appeal, arguing that the trial court should have granted their motion for summary judgment and denied the District's and Amezquita's motions for summary judgment.

## DISABLED VETERAN TAX EXEMPTION

The Seguins argue that Bobby Seguin need not be a Texas resident in order to receive the disabled veteran tax exemption under section 11.22 of the Texas Tax Code. We disagree.

### A. Standard of Review

Statutory construction is a question of law we review de novo. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). Our primary objective in construing statutes is to give effect to the legislature's intent. *Id.* In ascertaining legislative intent, if the words of a statute are clear and unambiguous, we apply them according to their plain and common meaning. *Id.* If the plain language of a statute does not convey the legislature's apparent intent, we may resort to additional construction aids, such as the objective of the law, the legislative history, the common law or former statutory provisions, including laws on the same or similar subject, and the consequences of a particular construction. *Id.* at 867-68; *see also* TEX. GOV'T CODE ANN. §§ 311.023(1), (3), (5) (West 2005) (allowing a court to consider the objective of the statute, legislative history, and the consequences of a proposed construction). Further, "we must always consider the statute as a whole rather than its isolated provisions." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). "We should not give one

provision a meaning out of harmony or inconsistent with other provisions, although it may be susceptible to such a construction standing alone." *Id.*

Additionally, in Texas, exemptions from taxation are not favored in the law and will not be favorably construed. *N. Alamo Water Supply Corp. v. Willacy Cnty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *Harris Cnty. Appraisal Dist. v. Wilkinson*, 317 S.W.3d 763, 766 (Tex. App.—Houston [1st Dist.] 2010, no pet.). "Statutory exemptions from taxation are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally." *N. Alamo Water*, 804 S.W.2d at 899. Accordingly, the burden of proof of clearly showing that an individual falls within the statutory exemption is on the claimant. *See id.*

## B. *Disabled Veterans Exemption as Provided by Section 11.22 of the Texas Tax Code*

Section 11.22 provides the following:

(a) A disabled veteran is entitled to an exemption from taxation of a portion of the assessed value of a property the veteran owns and designates as provided by Subsection (f) in accordance with the following schedule . . . .

(b) A disabled veteran is entitled to an exemption from taxation of $12,000 of the assessed value of a property the veteran owns and designates as provided by Subsection (f) of this section if the veteran: (1) is 65 years of age or older and has a disability rating of at least 10 percent; (2) is totally blind in one or both eyes; or (3) has lost the use of one or more limbs.

(c) If a disabled veteran who is entitled to an exemption by Subsection (a) or (b) of this section dies, the veteran's surviving spouse is entitled to an exemption from taxation of a portion of the assessed value of a property the spouse owns and designates as provided by Subsection (f) of this section. The amount of the exemption is the amount of the veteran's exemption at time of death. The spouse is entitled to an exemption by this subsection only for as long as the spouse remains unmarried. If the spouse does not survive the veteran, each of the veteran's surviving children who is younger than 18 years of age and unmarried is entitled to an exemption from taxation of a portion of the assessed value of a property the child owns and designates as provided by Subsection (f) of this section. The amount of exemption for each eligible child

is computed by dividing the amount of the veteran's exemption at time of death by the number of eligible children.

(d) If an individual dies while on active duty as a member of the armed services of the United States: (1) the individual's surviving spouse is entitled to an exemption from taxation of $5,000 of the assessed value of the property the spouse owns and designates as provided by Subsection (f) of this section; and (2) each of the individual's surviving children who is younger than 18 years of age and unmarried is entitled to an exemption from taxation of a portion of the assessed value of a property the child owns and designates as provided by Subsection (f) of this section, the amount of exemption for each eligible child to be computed by dividing $5,000 by the number of eligible children.

(e) An individual who qualifies for more than one exemption authorized by this section is entitled to aggregate the amounts of the exemptions, except that: (1) a disabled veteran who qualifies for more than one exemption authorized by Subsections (a) and (b) of this section is entitled to only one exemption but may choose the greatest exemption for which he qualifies; and (2) an individual who receives an exemption as a surviving spouse of a disabled veteran as provided by Subsection (c) of this section may not receive an exemption as a surviving child as provided by Subsection (c) or (d) of this section.

(f) An individual may receive an exemption to which he is entitled by this section against only one property, which must be the same for every taxing unit in which the individual claims the exemption. If an individual is entitled by Subsection (e) of this section to aggregate the amounts of more than one exemption, he must take the entire aggregated amount against the same property. An individual must designate on his exemption application form the property against which he takes an exemption under this section.

(g) *An individual is not entitled to an exemption by this section unless he is a resident of this state.*

(h) In this section:
(1) "Child" includes an adopted child or a child born out of wedlock whose paternity has been admitted or has been established in a legal action.
(2) "Disability rating" means a veteran's percentage of disability as certified by the Veterans' Administration or its successor or the branch of the armed services in which the veteran served.
(3) "Disabled veteran" means a veteran of the armed services of the United States who is classified as disabled by the Veterans' Administration or its successor or the branch of the armed services in which the veteran served and whose disability is service-connected.

(4) "Surviving spouse" means the individual who was married to a disabled veteran or member of the armed services at the time of the veteran's or member's death.

TEX. TAX CODE ANN. § 11.22 (West Supp. 2011) (emphasis added).[1] Thus, according to the plain language of section 11.22(g), residency is a requirement in order to qualify for the exemption.

The Seguins argue in their brief, however, that "[i]t is wrong to focus only on the sentence in section 11.22(g) [that] addresses 'individuals' to deny Bobby's disabled veteran exemption rights" because "when one considers the specific operative term 'disabled veteran' . . ., that language unequivocally grants a disability service related exemption to Bobby." In other words, it appears the Seguins are arguing that subsection (g) does not apply to Bobby Seguin because he is a "disabled veteran," and not "an individual." The District responds that for purposes of section 11.22, included within the term "individual" is "disabled veteran". We agree with the District. In looking at the statute as a whole, it is clear that a "disabled veteran" is a subset of an "individual."

The term "individual" refers to "disabled veteran"; "surviving spouse"; and "each of the individual's surviving children who is younger than 18 years of age and unmarried." *See* TEX. TAX CODE ANN. § 11.22 (West Supp. 2011) (emphasis added). Subsection (a) and (b) provide that a "disabled veteran" is entitled to an exemption. *See id.* § 11.22(a)-(b). Subsection (c) states that if a "disabled veteran" who is entitled to an exemption by subsection (a) or (b) dies, then the veteran's "surviving spouse" (or if there is no surviving spouse, then "each of the veteran's surviving children who is younger than 18 years of age and unmarried") is entitled to the exemption so long as the spouse remains unmarried. *See id.* § 11.22(c). Subsection (d) provides that if an "individual" dies while on active duty as a member of the armed services of the United

---

[1] Although this statute was amended in 2009, the language of the statute did not change in any substantive way related to the issue before us.

States, then the "individual's surviving spouse" and "each of the individual's surviving children who is younger than 18 years of age and unmarried" are entitled to an exemption. *See id.* § 11.22(d). Subsection (e) states that an "individual" who qualifies for more than one exemption authorized by this section is entitled to aggregate amounts of the exemptions except that (1) a "disabled veteran" who qualifies for more than one exemption authorized by Subsections (a) and (b) of this section is entitled to only one exemption but may choose the greatest exemption for which he qualifies; and (2) "an individual who receives an exemption as a surviving spouse of a disabled veteran" may not receive an exemption as a surviving child as provided by subsection (c) or (d) of this section. *See id.* § 11.22(e). Subsection (f) provides that "an individual" may receive an exemption to which he is entitled by this section against only one property, which must be the same for every taxing unit in which the individual claims the exemption. *See id.* § 11.22(f). Also according to subsection (f), if "an individual" is entitled by subsection (e) to more than one exemption, he must take the entire aggregated amount against the same property. *See id.* Also, "an individual" must designate on his exemption application form the property against which he takes an exemption under this section. *See id.* And, finally, subsection (g) states that "an individual" is not entitled to an exemption by this section unless he is a resident of this state. *See id.* § 11.22(g). Considering the statute as a whole, it is clear that the term "individual," as used in section 11.22(g), refers to a "disabled veteran," a "surviving spouse," and to each of the "surviving children who is younger than 18 years of age and unmarried." Indeed, if subsection (g) did not apply to disabled veterans, then neither would subsection (e), which refers to disabled veterans, or subsection (f), which is referenced in subsection (a). Thus, subsection (g)'s residency requirement applies to disabled veterans. That is, to be entitled to the exemption, disabled veterans must be residents of Texas.

The Seguins alternatively argue that if subsection (g) applies to Bobby, then Texas residency is only a requirement when one first applies for the exemption. Thus, they argue that because Bobby met the residency requirement when he first applied for the exemption, continued Texas residency was not required. To support this argument, they point out that subsection (g) follows subsection (f), which requires individuals to designate on the application form the property for which the tax exemption is claimed. Thus, they argue that subsection (g) "clarifies an inception requirement for all qualified 'individuals' (and for all beneficiary groups) [to be] Texas residents when first *applying for* and *obtaining* the exemption." (emphasis in original). We decline to adopt this interpretation of the statute. The fact that subsection (g) follows subsection (f) in no way indicates that subsection (g) is intended to clarify subsection (f).

The Seguins also argue section 11.43(c) of the Tax Code supports their inception requirement interpretation. They point to language in section 11.43(c) that states a disabled veteran need not re-apply each year in order to be entitled to the exemption. Thus, they argue that a disabled veteran need only meet subsection (g)'s Texas residency requirement when he first applies for the exemption. We disagree. Section 11.43(c) provides the following:

> An exemption provided by Section . . . 11.22 . . ., once allowed need not be claimed in subsequent years, and except as otherwise provided by Subsection (e), the exemption applies to the property until it changes ownership or the person's qualification for the exemption changes. However, the chief appraiser may require a person allowed one of the exemptions in a prior year to file a new application to confirm the person's current qualification for the exemption by delivering a written notice that a new application is required, accompanied by an appropriate application form, to the person previously allowed the exemption.

TEX. TAX CODE ANN. § 11.43(c) (West Supp. 2011).[2] Thus, a disabled veteran allowed an exemption provided by section 11.22 need not re-apply unless he no longer owns the property or his "qualification" for the exemption changes. Although "qualification" is not defined in the Tax

---

[2] Although this statute was amended in 2011, the language of the statute did not change in any substantive way related to the issue before us.

Code, subsection (g)'s residency requirement, when read in context of the entire statute, is clearly a "qualification" of receiving the exemption. Thus, once a disabled veteran is no longer a Texas resident, he no longer qualifies for the exemption. Further section 11.43(c) allows the chief appraiser to require a person to re-apply for his exemption and prove his "current" qualification for the exemption. This language does not support the Seguins' inception requirement interpretation.

### C. Does the Texas Constitution create a vested property right in the disabled veteran tax exemption?

According to the Seguins, article VIII, § 2(b) of the Texas Constitution "envisions the creation of a vested property right in service-connected disabled veterans, to be implemented by the Legislature." In essence, the Seguins argue that once Bobby Seguin initially qualified for the disabled veteran tax exemption in 1984, he secured a vested right to this tax exemption in perpetuity – a "right" that could never be disturbed.

We first note that the Seguins cite no case standing for the principle that a tax exemption like the disabled veteran tax exemption is a vested property right. We further note that article VIII, § 2(b) has discretionary language; it provides that "[t]he legislature *may*, by general law, exempt property owned by a disabled veteran or by the surviving spouse and surviving minor children of a disabled veteran."[3] TEX. CONST. art. 8, § 2(b) (emphasis added). Article VIII,

---

[3] The rest of Subsection (b) provides the following:

> A disabled veteran is a veteran of the armed services of the United States who is classified as disabled by the Veterans' Administration or by a successor to that agency or by the military service in which the veteran served. A veteran who is certified as having a disability of less than 10 percent is not entitled to an exemption. A veteran having a disability rating of not less than 10 percent but less than 30 percent may be granted an exemption from taxation for property valued at up to $5,000. A veteran having a disability rating of not less than 30 percent but less than 50 percent may be granted an exemption from taxation for property valued at up to $7,500. A veteran having a disability rating of not less than 50 percent but less than 70 percent may be granted an exemption from taxation for property valued at up to $10,000. A veteran who has a disability rating of 70 percent or more, or a veteran who has a disability rating of not less than 10 percent and has attained the age of 65, or a disabled veteran whose disability consists of the loss or loss of

§ 2(b)'s use of "may" grants discretion to the legislature in determining whether to enact statutes exempting property owned by disabled veterans from taxation. *See* TEX. GOV'T CODE ANN. § 311.016 (West 2005) ("The following constructions apply unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute: (1) 'May' creates discretionary authority or grants permission or a power. . . ."); *Alexander Shren-Yee Cheng v. Zhaoya Wang*, 315 S.W.3d 668, 672 (Tex. App.—Dallas 2010, no pet.) ("When the term 'may' is used in a statute it indicates the provision is discretionary, not mandatory.") (citing *Hardy v. Marsh*, 170 S.W.3d 865, 870-71 (Tex. App.—Texarkana 2005, no pet.)). Indeed, the constitutional analysis, written by the Texas Legislative Council at the time Texas citizens voted in favor of the amendment, stated the following:

> The proposed amendment to Article VIII, § 2, would permit the legislature to grant property tax exemptions to disabled veterans and to their surviving spouses and surviving minor children. This proposal is permissive in that it does not itself grant a tax exemption but gives this authority to the legislature should it choose to do so.

*Proposed Constitutional Amendments Analyzed*, Texas Legislative Council, at 17 (1972). In the "Arguments For" section, the Legislative Council noted the following:

> The proposed amendment is permissive, leaving the necessary details of administration to be spelled out by the legislature, *which could also revoke the exemptions granted should the need arise*.

*Id.* at 18 (emphasis added). Given the permissive nature of the amendment and the fact that it is legislatively revocable, we hold that Bobby Seguin does not have a vested property right in receiving the disabled veteran tax exemption.

---

use of one or more limbs, total blindness in one or both eyes, or paraplegia, may be granted an exemption from taxation for property valued at up to $12,000. The spouse and children of any member of the United States Armed Forces who dies while on active duty may be granted an exemption from taxation for property valued at up to $5,000. A deceased disabled veteran's surviving spouse and children may be granted an exemption which in the aggregate is equal to the exemption to which the veteran was entitled when the veteran died.

TEX. CONST. art. 8, § 2(b).

### D. Is section 11.22 unconstitutional?

The Seguins also argue that section 11.22 is unconstitutional because the Texas Constitution did not grant the Texas Legislature authority to limit the class of disabled veterans entitled to receive the tax exemption. That is, they argue the legislature had no authority to limit the tax exemption to only disabled veterans who live in Texas. We disagree.

In evaluating whether a statute is unconstitutional, we begin with a presumption that the statute is constitutional and defer to the legislature's determinations of a statute's wisdom or expediency. *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex. 1996). We also presume that the legislature "understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based on adequate grounds." *Id.* A party who wishes to challenge the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *Id.*

The Texas Constitution "does not exempt property from taxation; rather it authorizes the legislature to provide specific exemptions by statute within certain parameters." *Ultrasound Technical Servs., Inc. v. Dallas Cent. Appraisal Dist.*, 357 S.W.3d 174, 177 (Tex. App.—Dallas 2011, no pet. h.). "'While the legislature may restrict' an exemption authorized in the constitution, it may not 'broaden' or 'enlarge' a tax exemption 'beyond the constitutional confines.'" *Id.* (quoting *Dickison v. Woodmen of the World Life Ins. Soc'y*, 280 S.W.2d 315, 317 (Tex. Civ. App.—San Antonio 1955, writ ref'd)). Here, the Texas Constitution provides that the legislature "may" exempt property owned by a "disabled veteran" from taxation. In enacting section 11.22, the legislature acted within the discretion given to it by the constitution. The

legislature did not "broaden" or "enlarge" the tax exemption; instead it *limited* the exemption to a subset of disabled veterans: those disabled veterans who live in Texas.

Nevertheless, the Seguins argue that the legislature had no constitutional authority to limit the class of disabled veterans who would be entitled to the tax exemption because article VII, section 2(b) did not by specific language grant the legislature power to limit the class of disabled veterans. In support of this argument, the Seguins cite *Martinez v. Dallas Central Appraisal District*, 339 S.W.3d 184 (Tex. App.—Dallas 2011, no pet.). In that case, although the homeowner owned only a fractional interest in the property, he argued that he was constitutionally entitled to school tax homestead exemptions of at least $20,000 because (1) the constitution grants "an adult" a $15,000 school tax exemption, and (2) the constitution and the tax code grant "an individual" a minimum $5,000 exemption when a taxing unit, such as the taxing unit in the case, allows an optional homestead amount. *Id.* at 193. The homeowner claimed that section 11.41(a) of the Tax Code, which provides for the application of exemptions based upon a person's fractional ownership interest in property, was unconstitutional. *Id.* The Dallas Court of Appeals emphasized the high burden placed on a party challenging the constitutionality of a statute. *Id.* at 194. The court held that by "[o]ffering only unsupported argument that the law 'should not apply,'" the homeowner failed "to meet this burden." *Id.* The court then stated the following:

> In addition, [the homeowner]'s argument ignores the constitutional provision which states "[t]he legislature may by general law prescribe procedures for the administration of residence homestead exemptions." TEX. CONST. art. VIII, § 1-b(e). Pursuant to this authorization, the legislature enacted section 11.41(a) of the tax code.

*Id.* Extrapolating from this language, the Seguins argue that because article VIII, § 2(b) does not specifically state that the legislature may limit any disabled veteran tax exemption to a subset of

- 13 -

disabled veterans, the legislature therefore did not have any authority to grant an exemption to only disabled veterans who live in Texas. We decline to follow the Seguins' rationale.

Instead, we find more persuasive the reasoning by the same Dallas Court of Appeals in the more recent case of *Ultrasound Technical Services, Inc. v. Dallas Central Appraisal District*, 357 S.W.3d 174 (Tex. App.—Dallas 2011, no pet. h.). In that case, a for-profit school argued that section 11.21 of the Tax Code, which provides a tax exemption only for non-profit schools, was unconstitutional. *Id.* at 175. The for-profit school emphasized that the language of article VIII, § 2(a) of the Texas Constitution did not provide for any such limitation. *Id.* Thus, the for-profit school argued the legislature exceeded its authority by limiting the tax exemption to non-profit schools. *Id.* The Dallas Court of Appeals rejected this argument and held that section 11.21 was constitutional. *Id.* In so holding, the court noted that the Texas Constitution itself does not exempt property from taxation; rather it authorizes the legislature to provide specific exemptions by statute within certain parameters. *Id.* at 177. The court explained that "while the legislature may restrict an exemption authorized in the constitution, it may not 'broaden' or 'enlarge' a tax exemption beyond the constitutional confines." *Id.* (citation omitted). The court emphasized that the constitutional provision provides that the legislature "may" exempt "schools" from taxation. *Id.* at 178. The legislature then enacted section 11.21, which exempts a subset of schools – non-profit schools. *Id.* According to the Dallas Court of Appeals, the "legislature is empowered to 'restrict' this statutory exemption authorized by the constitution and has not 'enlarged' it 'beyond the constitutional confines.'" *Id.* (citing *Dickison v. Woodmen of the World Life Ins. Soc'y*, 280 S.W.2d 315, 317 (Tex. Civ. App.—San Antonio 1955, writ ref'd)). Thus, the court concluded that the school's constitutional challenge was not meritorious. *Id.*

The Seguins attempt to distinguish *Ultrasound* by arguing that article VIII, § 2(a), the constitutional provision at issue in *Ultrasound*, contains the following specific language: "the legislature by general law may provide eligibility limitations for the exemption and may impose sanctions related to the exemption in furtherance of the taxation policy of this subsection." However, reading section 2(a) as a whole, this language appears not to relate to the not-for-profit and for-profit school distinction, but rather to "any property owned by a church or by a strictly religious society that owns an actual place of religious worship." Indeed the limiting language the Seguins point to in section 2(a) precedes the language relating to creating a tax-exempt status for schools.[4] Further, in *Ultrasound*, the Dallas Court of Appeals did not rely on such language

---

[4] Article VIII, section 2(a) provides the following:

> All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; but the legislature may, by general laws, exempt from taxation public property used for public purposes; actual places of religious worship, also any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place for the ministry of such church or religious society, and which yields no revenue whatever to such church or religious society; provided that such exemption shall not extend to more property than is reasonably necessary for a dwelling place and in no event more than one acre of land*; any property owned by a church or by a strictly religious society that owns an actual place of religious worship if the property is owned for the purpose of expansion of the place of religious worship or construction of a new place of religious worship and the property yields no revenue whatever to the church or religious society,* provided that the legislature by general law may provide eligibility limitations for the exemption and may impose sanctions related to the exemption in furtherance of the taxation policy of this subsection*; any property that is owned by a church or by a strictly religious society and is leased by that church or strictly religious society to a person for use as a school, as defined by Section 11.21, Tax Code, or a successor statute, for educational purposes; places of burial not held for private or corporate profit; solar or wind-powered energy devices; *all buildings used exclusively and owned by persons or associations of persons for school purposes* and the necessary furniture of all schools and property used exclusively and reasonably necessary in conducting any association engaged in promoting the religious, educational and physical development of boys, girls, young men or young women operating under a State or National organization of like character; also the endowment funds of such institutions of learning and religion not used with a view to profit; and when the same are invested in bonds or mortgages, or in land or other property which has been and shall hereafter be bought in by such institutions under foreclosure sales made to satisfy or protect such bonds or mortgages, that such exemption of such land and property shall continue only for two years after the purchase of the same at such sale by such institutions and no longer, and institutions engaged primarily in public charitable functions, which may conduct auxiliary activities to support those charitable functions; and all laws exempting property from taxation other than the property mentioned in this Section shall be null and void.

TEX. CONST. art. VIII, § 2(a) (emphasis added).

in the Texas Constitution for its holding other than the discretionary language of "may." *See Ultrasound*, 357 S.W.3d at 178 ("The constitution provides the legislature 'may' exempt 'schools' from taxation.").

We therefore hold that the legislature did not exceed its constitutional authority in limiting the disabled veteran tax exemption to those disabled veterans who reside in Texas.

### E. Were Bobby Seguin's constitutional rights violated?

#### 1. Equal Protection

The Seguins argue Bobby's equal protection rights were violated because "Bobby qualified, and was certified, under VA criteria and the Texas disabled veteran's statute, then was wrongly and prejudicially treated differently than other similarly disabled resident veterans without a reasonable basis." The Seguins argue that strict-scrutiny review should apply because "Bobby arbitrarily lost a fundamental right afforded to all other qualified Texas service-connected disabled veterans."

The equal protection clause of the Fourteenth Amendment forbids a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 638-39 (Tex. 2008) (quoting Fourteenth Amendment). "However, the Supreme Court has recognized that 'most laws differentiate in some fashion between classes of persons'; therefore, unless a classification 'jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic,' the law will be upheld as long as it is rationally related to a legitimate state interest." *Id.* at 639 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Further, "Texas courts have viewed tax legislation as deserving special consideration." *Vinson v. Burgess*, 773 S.W.2d 263, 266 (Tex. 1989).

As noted, the tax exemption granted to disabled veterans does not create a fundamental right. In their reply brief, the Seguins also argue (in a conclusory fashion) that Bobby is "a member of a special class of citizen soldiers." They cite no authority for the proposition that such a class of soldiers is a suspect class entitled to heightened review. *See* TEX. R. APP. P. 38.1(h). Thus, rational-basis review applies, and we will uphold the law as long as it is rationally related to a legitimate state interest. *First Am. Title Ins.*, 258 S.W.3d at 639.

In support of their argument that section 11.22(g)'s residency requirement is not rationally related to any legitimate state interest, the Seguins rely on *HL Farm Corp. v. Self*, 877 S.W.2d 288 (Tex. 1994). In *HL Farm*, the supreme court held that a Texas statute denying an open-space land designation to land owned by a nonresident alien violated the equal protection clause of the Texas Constitution. *Id.* at 292. In applying rational-basis review, the supreme court concluded that the government's purpose of preserving open-space land was based upon use of land, and not ownership of land. *Id.* According to the court, "[a] 'foreign corporation' owned by a nonresident alien may contribute to the preservation of open-space land as well as any Texas individual or legal entity." *Id.* Thus, the court reasoned that no rational basis existed for denying an open-space land designation to a foreign corporation owned by a nonresident alien. *Id.*

In this case, all parties agree that the purpose of the disabled veteran tax exemption was to recognize the contributions and sacrifices of disabled veterans and their families. It is rational for the legislature to limit such a token of appreciation to those disabled veterans (and qualifying family members) who reside in Texas because Texas residents bear the primary responsibility of paying for government, not merely through property tax, but through other taxes which are principally imposed on residents. It is the residents of Texas who will principally bear the costs of providing services due to the revenue lost by the tax exemption. Thus, we conclude that

section 11.22(g)'s residency requirement is rationally related to a legitimate governmental purpose.

### 2. Due Process

The Seguins also argue that Bobby Seguin's due process rights were violated. A violation of substantive due process occurs when the government deprives individuals of constitutionally protected rights by an arbitrary use of power. *Byers v. Patterson*, 219 S.W.3d 514, 525 (Tex. App.—Tyler 2007, no pet.). To prevail on a substantive due process claim, the claimant must establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies. *Id.* Here, Bobby Seguin does not have a constitutionally protected right in the disabled veteran tax exemption. Thus, there has been no due process violation.

### EQUITABLE ESTOPPEL

The Seguins alternatively argue that the District and Amezquita are equitably estopped from removing the tax exemption because the District has been mailing notices to the Seguins' out-of-state address since 1990 and was thus aware that the Seguins were no longer Texas residents. However, the doctrine of "unclean hands" requires that one who comes seeking equity must come with clean hands. *ANCO Ins. Servs. of Houston, Inc. v. Romero*, 27 S.W.3d 1, 6 (Tex. App.—San Antonio 2000, pet. denied). Pursuant to the Tax Code, a disabled veteran does not need to claim the disabled veteran tax exemption unless ownership of the property changes or the person's qualification for the exemption changes. TEX. TAX CODE ANN. § 11.43(c) (West 2011). Once Bobby Seguin was no longer a Texas resident, his qualification for the disabled tax exemption changed. *See id.* § 11.22. The Seguins, however, never notified the District that they

were no longer Texas residents until they responded to the letter sent by the District in 2009. Thus, it cannot be said that the Seguins have come in equity with clean hands.

Further, waiver and estoppel do not generally apply to governmental entities. *In re S.A.P.*, 156 S.W.3d 574, 577 (Tex. 2005). "When a governmental unit is exercising governmental powers it is not subject to estoppel." *Leeco Gas & Oil Co. v. Cnty. of Nueces*, 736 S.W.2d 629, 630 (Tex. 1987). The Seguins have made no showing of why this general rule should not apply here. Moreover, there is no showing that the District and Amezquita intentionally relinquished their rights merely by mailing notices to an address. *See City of Victoria v. Hoffman*, 809 S.W.2d 603, 605 (Tex. App.—Corpus Christi 1991, writ denied) (explaining that waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right").

### Non-Tax Code Claims

The Seguins argue that governmental immunity does not apply because "the sole purpose of the Seguins' claim is not to obtain money damages, but to establish that Chief Appraiser Amezquita acted without legal authority or failed to perform a purely ministerial act." They criticize Amezquita for removing the disabled veteran exemption from the property at issue. They argue "a declaratory judgment action provides a vehicle for relief which is not barred by the doctrine of governmental immunity" and cite *Cobb v. Harrington*, 190 S.W.2d 709 (Tex. 1945). We need not determine whether governmental immunity bars the Seguins' claims because the assumption in the Seguins' argument is that Amezquita acted without legal authority. Under the Tax Code, the chief appraiser of the appraisal district administers exemptions, determines an applicant's right to an exemption, confirms the person's current qualification for an exemption, and investigates the qualification. *See* TEX. TAX CODE ANN. § 11.43(a), (c), (h) (West Supp.

2011); *id.* § 11.45(a) (West 2008). "If the chief appraiser discovers an exemption that is not required to be claimed annually has been erroneously allowed in any one of the five preceding years, the chief appraiser *shall* add the property or appraised value that was erroneously exempted for each year to the appraised roll . . . ." TEX. TAX. CODE ANN. § 11.43(i) (West Supp. 2011) (emphasis added), *see id.* § 25.21 (West 2008). Thus, Amezquita had legal authority to remove the tax exemption from the Seguins' property. Further, we note that Amezquita correctly concluded that as a nonresident of Texas, Bobby Seguin was not entitled to the disabled veteran tax exemption.

## CLAIMS AGAINST AMEZQUITA IN INDIVIDUAL CAPACITY

The trial court granted summary judgment in favor of Amezquita and dismissed all claims against him in his individual capacity. Once again, the Seguins claims against Amezquita are premised on him having acted without legal authority or failed to perform a purely ministerial act. However, as noted, Amezquita did have legal authority to remove the tax exemption.

## CONCLUSION

We conclude that in order to be entitled to receive the disabled veteran tax exemption, a disabled veteran must meet section 11.22(g)'s Texas residency requirement. We further hold that article VIII, § 2(b) does not create a vested property right and that the Texas Legislature had authority to impose section 11.22(g)'s residency requirement. Moreover, neither Bobby Seguin's equal protection rights nor his due process rights were violated. The District and Amezquita are not equitably estopped from removing the disabled veteran tax exemption from the Seguins' property. The trial court correctly granted summary judgment on the Seguins' non-tax code claims. And, finally, the trial court correctly granted summary judgment on the Seguins' claims

against Amezquita in his individual capacity.[5] Therefore, for the reasons stated above, we affirm the summary judgments of the trial court.

Karen Angelini, Justice

---

[5] Having so held, we need not reach the remaining arguments brought by the Seguins.